## COMMONWEALTH vs. ALEX DOSOUTO.

No. 11-P-477.

Norfolk. March 7, 2012. - September 25, 2012.

Present: RUBIN, BROWN, & HANLON, JJ.

*Robbery. Practice, Criminal,* Severance, Hearsay, Required finding, Instructions to jury. *Evidence,* Hearsay, Prior misconduct.

At a criminal trial, the judge's denial of the defendant's motion to sever, arising from the admission of inculpatory remarks made by his nontestifying codefendant, did not violate the defendant's constitutional right to confront an adverse witness, where it was not immediately apparent to the jury that the codefendant's statement referred directly to the defendant and the judge gave limiting instructions immediately after admission of the statement. [477-478]

At a criminal trial, the admission of evidence of prior bad acts of the defendant, even if error, was harmless, where the properly admitted evidence of guilt was overwhelming. [478-480]

At the trial of an indictment charging armed robbery, the evidence was sufficient to sustain the defendant's conviction on a joint venture theory, in that the jury permissibly could infer that the defendant knew a gun was used to commit the robbery. [480-481]

At the trial of an indictment charging armed robbery, no substantial risk of a miscarriage of justice arose from the judge's instructions to the jury, where, although the judge did not specifically state that proof included the requirement that the defendant must have known one of his companions was armed, the instructions when viewed as a whole repeatedly emphasized not just that the defendant must have shared the intent of the assailants, but also that he must have knowingly participated in the commission of the armed robbery and that his intent could be inferred from his knowledge of the circumstances and subsequent participation in the crime. [481]

INDICTMENT found and returned in the Superior Court Department on May 14, 2008.

A motion to sever was heard by *Janet L. Sanders*, J., and the case was tried before her.

*Melissa P. White Ellis* for the defendant.

*Alexei Tymoczko*, Assistant District Attorney, for the Commonwealth.

BROWN, J. After a joint jury trial in the Superior Court the defendant was convicted of a single count of armed robbery. On appeal the defendant argues that the trial judge (1) erred in denying his motion to sever the trial from that of his codefendant, Paulino Barros;[1] (2) improperly admitted prior bad act evidence; (3) wrongly denied his motion for a required finding of not guilty; and (4) failed to give an instruction that the Commonwealth must prove the defendant knew one of his companions was armed with a dangerous weapon.

We briefly summarize the evidence adduced at trial, reserving certain details for later discussion of the defendant's claims of error. Sometime shortly before 11:00 P.M., on February 14, 2008, Kenneth Wong was walking home when he saw a black, two-door Honda Civic sedan park on his street. Wong testified that two dark-skinned males jumped out of the car, rushed toward him, and ordered him to give them his money. According to Wong, the two males appeared to be between the ages of sixteen and eighteen. One of the males, later identified as Shongi Fernandes, was wearing a black, hooded sweatshirt. Fernandes began to go through Wong's pockets, while the other male, later identified as Elder Teixeira, pointed a gun at the victim. Fernandes told Wong that Teixeira would shoot him if he did not turn over his money. Wong said, "Hold on," took out his wallet, and handed it to Fernandes. The wallet contained Wong's driver's license, a charge card, and $50. The two assailants got back into the Honda, which immediately drove past Wong. Wong tried to get the license plate number, but the vehicle lights were off and it was very dark.

Wong's neighbor, Alex Stromberg, saw part of the encounter through his window, told his father to call the police, and immediately went outside to see if he could help Wong. In the few seconds it took him to get to the sidewalk, the robbery was over and Stromberg only saw what he described as a two-door Honda or Toyota quickly driving away with its "[h]eadlights out."

Wong ran to his car, and as he got in, he saw the suspects' vehicle turn left onto Whitwell Street. Wong tried to follow

[1]Represented by different counsel, Barros filed an appeal, submitted a brief, and appeared at oral argument, but withdrew his appeal before a decision was issued in his case or the case at bar.

them. Wong took a left turn onto Whitwell Street but quickly lost sight of the suspect vehicle because he could not keep up with it. Wong called 911 from his car, and the police arrived a few minutes later.

Milton patrolman Henry Colligan saw a black Honda Civic drive by his location at about 11:00 P.M. that evening, with only its "daytime running lights on . . . so the back of the vehicle was totally dark to anyone else coming up on it." Colligan initiated a stop for not having the headlights on, and the Civic immediately pulled over, at a location which was about a three- to five-minute drive (in the late evening) from the site of the robbery. The defendant was driving, and accompanying him in the vehicle were Paulino Barros, Elder Teixeira, and Shongi Fernandes.

At about 11:05 or 11:06 P.M., within about five minutes of the stop in Milton, Officer Bruce Trieu arrived at Wong's location in Quincy to investigate the report of an armed robbery. There, he spoke to Wong and Stromberg. Wong described the incident and provided a description of his assailants and the getaway car. The information was broadcast on the police radio.

Colligan was gathering information from the defendant when he heard the dispatch. Colligan stepped away from the vehicle and immediately radioed his department that he had stopped a vehicle "matching the description [of the vehicle that the] Quincy [police were] looking for." At about 11:10 P.M., Trieu received a radio dispatch, while he was still interviewing Wong, that Milton police had stopped a vehicle that matched Wong's description of the getaway car. Wong agreed to go with the police to see if he could identify any of the vehicle's occupants as the robbers.

Trieu drove Wong to the scene, where Wong identified Fernandes and Teixeira as his assailants. Wong also testified that he recognized a third person at the scene, stating, "[P]erhaps he was the driver, I don't know. He didn't get out of the car." Wong could not identify the defendant in court.

Police recovered a silver BB gun, initially thought to be a handgun, behind the front passenger seat in the two-door car. They also recovered Wong's wallet with his credit and identification cards from the center console. The defendant had fifty dollars on his person; there was no money in the victim's wallet

when the police found it in the car. Cash in the amount of $420 was recovered from Fernandes and fifty-one dollars was found on Teixeira.

The defendant did not testify or call any witnesses. Through argument and cross-examination of the Commonwealth's witnesses, the thrust of the defense was that the evidence was insufficient to show that the defendant was in the motor vehicle at the time of the robbery or, alternatively, even if he was in the car, that he participated in the crime or provided assistance.

1. *Motion to sever.* The defendant argues that his motion to sever should have been allowed because the judge refused to exclude the inculpatory remarks made by his codefendant, Paulino Barros. Specifically, Mahesh Balan, who had been employed at the time as a probation officer in the Norfolk County juvenile probation department, testified that Barros volunteered the following information during their first meeting, on June 26, 2009, about four months after the crime occurred:

> "[Barros told me that] he had a pending matter for armed robbery, and he stated that he wasn't too worried about the case, and he stated that he felt that the witnesses were not going to be able to identify him and that he wasn't worried about being held accountable for those crimes. . . . He continued to tell me that . . . he was at the incident of which he was charged for armed robbery. He participated in the events. He was outside the vehicle and with the parties involved in the crime. But he made it clear to me that at no point did he hold a gun that was involved in a crime."

Immediately thereafter, the judge gave a limiting instruction to the jury that the statements Barros made to Balan "are relevant and can be used only with respect to the Commonwealth's case against . . . Barros. They say nothing about . . . Dosouto and cannot be used in any way against . . . Dosouto."

Relying on *Bruton* v. *United States*, 391 U.S. 123, 135-137 (1968) (*Bruton*), the defendant claims that his constitutional right to confront an adverse witness was violated by the admission of the extrajudicial statement of his nontestifying codefendant, Barros. The defendant contends that Barros's statement when viewed in the context of the evidence created the "powerfully incriminating," *id.* at 135, inference that the defendant

was one of the "participants" and that Barros and he were together in the car that was stopped shortly after the robbery.

The defendant acknowledges that the United States Supreme Court has limited the application of the *Bruton* rule to only those cases where the codefendant's statement " 'expressly implicate[s]' the defendant, leaving no doubt that it would prove to be 'powerfully incriminating,' " *Commonwealth* v. *James*, 424 Mass. 770, 782 (1997), quoting from *Richardson* v. *Marsh*, 481 U.S. 200, 208 (1987), or where, despite any redaction of, or substitution for, a defendant's name, a codefendant's confession "point[s] directly" or "obviously refer[s] directly" to the defendant. *Gray* v. *Maryland*, 523 U.S. 185, 193-196 (1998) (*Gray*). *Commonwealth* v. *Vasquez*, 462 Mass. 827, 843 (2012) (*Vasquez*). Here, it was not "immediately apparent to the jury that the codefendant's statement . . . referred directly to the defendant . . . ." *Vasquez, supra.* The "statement [by itself] does not support an inference that [Barros] was referring to [the defendant]. Other evidence was required to link [the defendant] to the crime, and it did." *Id.* at 843-844. Barros inculpated himself in this misadventure, without identifying any of his compatriots, thus adding little to the other, overwhelming evidence of guilt adduced against the defendant.[2] The judge's limiting instructions therefore were "sufficient to obviate *Bruton* concerns." *Commonwealth* v. *Keevan*, 400 Mass. 557, 570 (1987). See *Commonwealth* v. *Blake*, 428 Mass. 57, 60 (1998); *Vasquez, supra*; *Commonwealth* v. *Wilson*, 46 Mass. App. Ct. 292, 297-298 (1999).

To the extent the defendant argues that he was further prejudiced by Barros's statement because it linked him to a probationer, an individual who by definition has a criminal background, that argument fails where the judge made clear that Barros's status as a probationer was irrelevant to the crime charged.

2. *Prior bad acts.* Close in time to the Wong robbery, two other robberies were reported in the same area involving two separate victims, Jeramie Green and Lin Xiao. These crimes

---

[2] We pause to note that Barros's statement that he did not "hold a gun that was involved in a crime" did not make it more probable that he, or the defendant, knew a weapon was used. It was merely probative of the fact that Barros knew the charges included an allegation that a weapon was involved.

were the subject of additional charges against the defendant, but when neither victim appeared at trial, two indictments were dismissed and the other indictments were nol prossed. At trial, these two other incidents were briefly referenced over objection. Police testimony indicated that at around the same time as the Wong robbery, they encountered a man named Jeramie Green near the Quincy Center subway station who was "[s]haken up" and "nervous" and who said he had been robbed. Additional testimony indicated that the police had also spoken to Lin Xiao, who was upset.[3] The defendant argues that this evidence was "prejudicial and inadmissible hearsay without any legitimate probative value."

Passing the question whether Green's statement and any statement Lin may have made about being robbed were admissible as excited utterances, see, e.g., *Commonwealth* v. *Beatrice*, 460 Mass. 255, 255-257 (2011), even if we were to assume that the evidence constituted inadmissible hearsay and was admitted "in violation of a defendant's confrontation rights," it "will not amount to reversible error 'if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' " *Commonwealth* v. *Rosario*, 430 Mass. 505, 511 (1999), quoting from *Delaware* v. *Van Arsdall*, 475 U.S. 673, 681 (1986). When this evidence is excluded entirely from our consideration, the other evidence against the defendant, as noted in the preceding section, is overwhelming. See *Commonwealth* v. *Rosario, supra.*

The incriminating evidence established that a vehicle that matched the victim's description of the getaway car was stopped within minutes of the robbery because its headlights were not illuminated. The defendant was driving the car when it was stopped. The defendant's failure to turn on the headlights indicated that he was aware the robbery had occurred recently and that he was still trying to avoid detection, including by the victim, who had tried to follow him. The evidence also showed that the victim unequivocally identified two of the vehicle's oc-

---

[3]Police testimony referred to Lin in one instance as the "second victim," but this reference was struck by the judge, and in her final instructions, the judge emphasized that any answer she struck was not evidence and could not be considered.

cupants as the men who had stolen his wallet and that the victim's wallet was found along with his identification cards in the console next to the driver's seat.

We are confident that this properly admitted evidence of guilt was "so powerful as to 'nullify any effect' " that the purportedly improperly admitted evidence, which was brief and devoid of detail, may have had on the jury. See *Commonwealth* v. *Vasquez*, 456 Mass. 350, 362 (2010), quoting from *Commonwealth* v. *Tyree*, 455 Mass. 676, 701 (2010).

3. *Sufficiency of the evidence.* The defendant argues that the evidence was insufficient to show that he knew a gun was used to commit the robbery, an essential element of the crime. *Commonwealth* v. *Melendez*, 427 Mass. 214, 215-216 (1998) ("It is, of course, correct that joint venture guilt for the commission of a crime involving the use of a dangerous weapon may not be imposed on a defendant unless he knew that one of his companions was armed").

Specifically, the evidence showed that Wong saw the car drive down his street, which was a dead end, turn around and come back up the street, and park. As soon as the vehicle parked, Wong testified, two men jumped out of the car. Wong further testified that as soon as he turned over his wallet, the two men got back into the car, which "was coming . . . . They had to pass me"; and then, the vehicle sped off and turned left onto Whitwell Street. Minutes later, the defendant was stopped while operating the vehicle.

Viewed under the familiar standard of *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), the evidence shows that the defendant positioned the car where he could observe the attack, as well as be prepared to pick up the culprits and facilitate an escape onto the main road. Moreover, the evidence also suggests the defendant watched the crime unfold, including the use of the gun to obtain the victim's submission, because he was responsible for insuring they could all quickly escape, and he pulled the car up immediately after the robbery and drove off as soon as the two assailants got in. These circumstances properly permitted the jury to infer that the defendant knew a gun was used to commit the robbery. See, e.g., *Commonwealth* v. *White*, 452 Mass. 133, 136 (2008) (an inference drawn from

circumstantial evidence "need only be reasonable and possible; it need not be necessary or inescapable," nor must every inference "be premised on an independently proven fact").

4. *Jury instruction.* Although the defendant did not object to the failure of the judge to instruct the jury about the definition of specific intent and that the Commonwealth must prove the defendant knew one of his companions was armed, he argues on appeal that the omissions created a substantial risk of a miscarriage of justice. See and compare *Commonwealth* v. *Bolling*, 462 Mass. 440, 450-452 (2012). Although the judge did not state specifically that proof includes the requirement that the defendant must know one of his companions is armed, when viewed as a whole, the instructions repeatedly emphasized not just that the defendant must share the intent of the assailants but also (1) that the defendant must "knowingly participate[]" "in the commission . . . of the armed robbery, with the intent required to commit an armed robbery," and (2) that the defendant's intent could be inferred "from his knowledge of the circumstances and any subsequent participation in the crime." See *Commonwealth* v. *Palmer*, 59 Mass. App. Ct. 415, 424 (2003). See also *Commonwealth* v. *Lee*, 460 Mass. 64, 68-70 (2011).

Even if we were to conclude that the instructions were flawed, the error did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002); *Commonwealth* v. *Palmer*, 59 Mass. App. Ct. at 424-426. Aside from the overwhelming evidence of the defendant's guilt,[4] we observe, in passing, that the defendant did not argue that the evidence only established the crime of unarmed robbery, but instead he maintained that the evidence was insufficient to show he was at the scene of the robbery. The situation is materially similar to that in *Commonwealth* v. *Hoa Sang Duong*, 52 Mass. App. Ct. 861, 869-870 (2001).

*Judgment affirmed.*

---

[4]The defendant as the driver of the getaway car was in a position to observe closely the robbery and was ready to respond, and did respond, to events as they occurred. See and compare *Commonwealth* v. *Lee*, 460 Mass. at 70 (knowledge may be inferred from circumstantial evidence; however, evidence in case did not warrant inference of knowledge of weapon).