## COMMONWEALTH VS. SAQUAN I. GORMAN.

No. 12-P-743.

Norfolk. April 12, 2013. - November 1, 2013.

Present: RUBIN, FECTEAU, & HINES, JJ.

*Home Invasion. Armed Assault in a Dwelling. Assault by Means of a Dangerous Weapon. Constitutional Law, Search and seizure. Due Process of Law, Seizure of motor vehicle. Search and Seizure, Motor vehicle. Practice, Criminal, Motion to suppress, Required finding, Instructions to jury. Evidence, Joint venturer. Firearms.*

There was no error in the denial of a criminal defendant's pretrial motion to suppress evidence obtained by police during an investigatory stop of an automobile in which the defendant was a passenger, where, at the time a seizure of the vehicle was effected by the activation of a pursuing police car's lights and siren, a reasonable suspicion on the part of police that the vehicle's occupants had committed a crime was supported by the sight of a gun lying in the road shortly after the passage of the vehicle, which had departed from a location close to a house where a crime committed with a gun was believed to have just occurred. [485-487]

At the trial of indictments charging, on a theory of joint venture, home invasion, armed assault in a dwelling house, and assault by means of a dangerous weapon, evidence that the defendant knew his joint venturer's intentions and shared them, as well as that the defendant knew his joint venturer had a weapon, was sufficient to sustain his convictions. [487-489]

At the trial of indictments charging, on a theory of joint venture, home invasion, armed assault in a dwelling house, and assault by means of a dangerous weapon, the judge's failure to instruct the jury that they were required to find that the defendant knew the perpetrator was armed in order to convict the defendant on a joint venture basis created a substantial risk of a miscarriage of justice. [489-492]

INDICTMENTS found and returned in the Superior Court Department on August 13, 2009.

A pretrial motion to suppress evidence was heard by *Janet L. Sanders*, J., and the cases were tried before *Kenneth J. Fishman*, J.

*Judith Ellen Pietras* for the defendant.

*Kevin J. Powers*, Assistant District Attorney, for the Commonwealth.

Rubin, J. On August 13, 2009, a grand jury in Norfolk County returned indictments charging the defendant and two codefendants[1] with a number of offenses in connection with an incident at a home in Randolph. Police had apprehended them after stopping the vehicle in which they were driving away from the scene of the incident. The defendant moved to suppress evidence gathered as a result of the vehicle stop, but this motion was denied. After a jury trial in Superior Court, the defendant was convicted as a joint venturer of home invasion, armed assault in a dwelling house, and assault by means of a dangerous weapon. He was acquitted of the charge of possession of a firearm while committing a felony.

On appeal, the defendant challenges the denial of his motion to suppress evidence obtained in connection with the vehicle stop, the sufficiency of the evidence demonstrating both his intent to commit the offenses as a joint venturer and his knowledge that the principal had a weapon, and the omission of a jury instruction that he could only be convicted as a joint venturer in the charged offenses if the Commonwealth proved he knew that the principal was armed. We hold that the defendant's motion to suppress was correctly denied, and that the evidence presented was sufficient to support the convictions. We conclude, however, that, on the facts of this case, the trial judge's failure to instruct the jury with respect to the requirement that the defendant knew that the principal was armed created a substantial risk of a miscarriage of justice. Accordingly, we reverse the defendant's convictions, and remand for a new trial should the Commonwealth decide to proceed with one.

1. *Motion to suppress.* We turn first to the defendant's claim that his motion to suppress evidence gathered as a result of the stop of the vehicle was erroneously denied. The defendant asserts that police lacked reasonable suspicion to seize the automobile in which he was a passenger. We accept the motion judge's subsidiary findings of fact, except when they are clearly erroneous, and we independently review the judge's ultimate

---

[1]The defendant's trial was severed on his motion.

findings and legal conclusions. *Commonwealth* v. *Stephens*, 451 Mass. 370, 381 (2008). In reciting the facts found by the motion judge, we supplement them with uncontested testimony from witnesses at the suppression hearing whom the judge implicitly credited. See *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007).

On the afternoon of July 2, 2009, L.A. heard a knock at the front door of her home in Randolph. She looked outside and saw the defendant, whom she did not recognize. Although he received no response from inside the home, the defendant continued knocking on the front door. L.A. then peered out a window and saw a second man, Jovan Gordon, walking to the rear of the house. She moved to secure a glass door that led from the garage into the home, but Gordon appeared in the garage, on the other side of the door. Gordon pointed a gun at her and shouted, demanding that she open the door. She ran to her bedroom, yelling that she was telephoning the police, which she did, and the two men left. After receiving L.A.'s 911 call, police dispatch broadcast her report of the incident and her description of Gordon as a bearded African-American man in a tan shirt and khaki pants. Dispatch also indicated that the suspect had a gun.

On his way to respond in his unmarked vehicle, Randolph police Detective David Clark saw a gray Acura automobile stopped along the side of North Street, blocks from L.A.'s address. An African-American man wearing a tan jacket and carrying a bag got into the vehicle, and it pulled away. It was headed in the direction from which Clark had come. Clark made a U-turn to follow this vehicle and radioed his observations. Either during the turn or after turning around, he activated his lights.

Detective Paul Smyth, who had also been driving toward L.A.'s house in an unmarked vehicle, heard Clark's transmission and moved to intercept the Acura. Turning onto North Street from Truman Drive, he cut immediately in front of Clark's vehicle as Clark completed his U-turn. The Acura had turned off North Street and onto Liberty Street. After Smyth turned onto Liberty Street, he sighted the Acura about one hundred yards ahead. He accelerated to catch up to the Acura, and he saw a gun lying in the eastbound lane of Liberty Street. Smyth estimated that the

gun was about seventy yards from where he had turned onto North Street. When he had closed to within thirty yards of the Acura, Smyth activated his lights and siren to stop the vehicle. It contained the defendant, Gordon, and a third man, who was driving. The gun, which was recovered from Liberty Street about 200 yards closer to North Street from where the Acura was stopped, was loaded. The three men were ordered out of the car and handcuffed. At that point, police took L.A. to the men's location, where she identified Gordon and the defendant. Officers arrested all three men.

An investigatory stop of a motor vehicle is appropriate when the police have "a reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom, that an occupant of the . . . vehicle had committed, was committing, or was about to commit a crime." *Commonwealth* v. *Alvarado*, 423 Mass. 266, 268 (1996). A seizure has occurred if a reasonable person would have believed he was not free to leave in view of the surrounding circumstances. *Commonwealth* v. *Smigliano*, 427 Mass. 490, 491 (1998). Under art. 14 of the Massachusetts Declaration of Rights, pursuit by a police officer constitutes a seizure and therefore must be supported by, at minimum, reasonable suspicion. *Commonwealth* v. *Stoute*, 422 Mass. 782, 788-789 (1996).

The defendant contends that the Acura was seized prior to Smyth's seeing the gun in the road. He argues that the seizure was therefore based solely on Clark's observing the defendant, whose appearance did not closely match the description broadcast of Gordon, entering the vehicle. That alone, he says, could not have given police reasonable suspicion to stop the vehicle. We assume, though we need not decide the question, that if the facts were as the defendant describes, his conclusion would be correct.

The defendant argues further that even Smyth's sighting of the gun did not give rise to reasonable suspicion that the occupants of the Acura had committed a crime. With that contention, we disagree. Even though Smyth did not see the weapon being ejected from the automobile, its presence in the street shortly after the passage of a vehicle that had departed from a location close to a house where a crime committed with a gun

was believed to have just occurred supports a reasonable suspicion on the part of police that the occupants of that vehicle had committed a crime.

Our analysis of the defendant's claim proceeds in two steps. First, we must determine when the Acura was seized, a question on which the defendant bears the burden of proof. See *Commonwealth* v. *Netto*, 438 Mass. 686, 697 (2003). Then we must determine whether, when that occurred, the police had discovered the gun in the road.

With respect to the first question, we conclude that the Acura was seized when Smyth turned on his lights and siren thirty yards behind the Acura on Liberty Street. As Clark completed his U-turn on North Street, during which he activated his lights and siren, Smyth cut off Clark, interposing his own unmarked vehicle between Clark's car and the Acura. At that point, Smyth's car was at least one hundred yards behind the Acura, which had taken a turn on Liberty Street, with Clark behind him even further from the Acura. When Smyth, in the lead police car, turned onto Liberty, the Acura was already more than one hundred yards down Liberty, past a slight bend. Only when Smyth's car, the one immediately behind the Acura, turned on its lights and siren was the Acura seized for purposes of constitutional analysis. Although Clark turned his vehicle around and activated his lights with the intention of catching and stopping the Acura, an officer's subjective intent is not relevant to the question whether a seizure has occurred, see *Commonwealth* v. *Cruz*, 459 Mass. 459, 462 n.7 (2011), and there is no evidence that the Acura was in a position to see or hear officer Clark's car when he activated his lights and siren — evidence that might have supported a finding that the Acura was seized at that earlier time. See *Commonwealth* v. *Campbell*, 69 Mass. App. Ct. 212, 215 (2007) (describing another circumstance where a seizure was not effected until sirens or lights were coupled with indications to persons inside the automobile that police were pursuing or focusing their attention on that vehicle); *Commonwealth* v. *Werner*, 73 Mass. App. Ct. 97, 104 (2008).

The second question, then, is whether the police had discovered the gun on Liberty when officer Smyth activated his lights and siren behind the Acura. The motion judge's findings

do not precisely delineate the time at which Smyth activated his lights and siren, but an examination of Smyth's testimony at the hearing (which the judge implicitly credited) makes clear that Smyth did not do so until after he saw the weapon.

Smyth testified that the Acura was at least one hundred yards ahead of him when he turned onto Liberty Street. He did not activate his lights and siren to stop the Acura until he was within thirty yards of the car. So, even if the Acura were not moving, which it plainly was, Smyth would have traveled at least seventy yards along Liberty before activating his siren. Smyth also testified that the gun was approximately seventy yards from the point on North Street, the intersection of North and Truman Drive, where he had cut off Clark's vehicle. The record does not show the distance between that intersection and the turnoff from North Street to Liberty Street, but Smyth's testimony necessarily implies that the gun was fewer than seventy yards down Liberty Street. Smyth must, then, have seen the gun before he came within thirty yards of the Acura and activated his lights and siren, thereby initiating the seizure. The stop therefore passes constitutional muster, and accordingly, the motion judge did not err in denying the defendant's motion to suppress.

2. *Sufficiency of the evidence at trial.* Joint venture liability arises when a defendant knowingly participates in the commission of the charged offense and has or shares the required criminal intent. *Commonwealth* v. *Zanetti,* 454 Mass. 449, 467 (2009). A joint venturer may only be convicted of a crime in which the elements require possession of a weapon — such as the three crimes of which the defendant was convicted — if he knew that the principal had a weapon. *Commonwealth* v. *Phillips,* 452 Mass. 617, 631 (2008). See *Commonwealth* v. *Lee,* 460 Mass. 64, 68 (2011) (stating that to share the principal's intent to commit a crime that requires the use of a weapon, a joint venturer must know that the principal has such an instrument). The jury may infer the defendant's mental state from the circumstances of the crime and his knowledge of them. See *Commonwealth* v. *Soares,* 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979).

In assessing the defendant's next claim, that the evidence was insufficient to demonstrate beyond a reasonable doubt that he knowingly participated in the crimes with the intent required to

commit them and that he knew that Gordon was armed, we must examine the evidence in the light most favorable to the Commonwealth and ask whether "any rational trier of fact could have found the essential elements . . . beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

One officer testified that the defendant told him that he and Gordon traveled to L.A.'s house together, and that Gordon began "casing" the house upon their arrival. The defendant argues that this is sufficient only to support a finding that he knew Gordon was seeking to break into an unoccupied home. However, while at the front door of the home, the defendant rang the bell and knocked on the door multiple times. The jury could have concluded that this indicated a plan to entice an occupant of the house into opening the door, for if the coventurers had planned to commit a burglary in an unoccupied house, there would have been no need to continue knocking when there was no response. At trial, L.A. testified that Gordon was carrying a clipboard. This also could have been taken as evidence of a plan to gain entrance to an occupied home, since a person may be more likely to open the door for a stranger if they perceive him to be an official; a technician; a charitable, religious, or political solicitor; or a salesperson: someone who might be carrying a clipboard. Evidence that the joint venturers believed the house to be occupied could also have led the jury to conclude that the defendant knew Gordon had a gun, since, if they were seeking to rob a home with one or more people inside, Gordon and the defendant would need a way to overcome any resistance. See *Commonwealth* v. *Netto*, 438 Mass. at 702-703; *Commonwealth* v. *Quinones*, 78 Mass. App. Ct. 215, 219 (2010) ("Our courts have long held that a defendant's knowledge that his coventurers would be armed may be demonstrated by proof of circumstances in which the need to overcome victim resistance is apparent").[2]

These inferences are not compelled, but, under the familiar

---

[2]In addition, the defendant was identified as the source of a fingerprint on the exterior of a window looking into the garage where Gordon had been when he threatened L.A. with the gun. Given the short period of time over which the incident unfolded, a rational fact finder could have concluded that the defendant actually saw Gordon pointing the gun at L.A. and that he was

*Latimore* standard, they are sufficient to support a jury finding that the defendant knew Gordon's intentions and shared them, as well as a finding that the defendant knew Gordon had a weapon. See *Commonwealth* v. *Brooks*, 422 Mass. 574, 577 (1996) ("The inferences drawn by the jury [in finding that the defendant shared the principal's intent or acted as a principal] need only be reasonable and possible and need not be necessary or inescapable").

3. *Jury instruction.* Finally, the defendant argues that the joint venture instruction given by the trial judge was inadequate. As discussed *supra*, when a defendant is charged as a joint venturer with a crime for which possession of a weapon is an element, a jury may only convict if they find the Commonwealth has proved beyond a reasonable doubt that the defendant knew that the principal had a weapon. *Commonwealth* v. *Phillips*, 452 Mass. at 631.

All four of the offenses on which the jury deliberated in this case require, as one of their elements, that the perpetrator be armed. See G. L. c. 265, § 15B(*b*) (assault by means of a dangerous weapon), § 18A (armed assault in a dwelling), § 18B (possession of a firearm in the commission of a felony), and § 18C (home invasion). The charges were presented to the jury exclusively on a joint venture theory. The trial judge gave a joint venture instruction that closely approximated that approved in *Commonwealth* v. *Zanetti*, 454 Mass. 449 (2009). Since *Zanetti*, however, the Supreme Judicial Court has made clear that it remains the law that "knowledge of a weapon is an element of the Commonwealth's proof when a defendant is prosecuted on a theory of joint venture where an element of the predicate offense is use or possession of a dangerous weapon." *Commonwealth* v. *Britt*, 465 Mass. 87, 99 (2013).

With respect to the charge of possessing a firearm while in commission of a felony, of which the defendant was acquitted,

---

acting as a lookout. Such conduct would also suffice to sustain the defendant's convictions, as it would show that he "stood within a few feet of the perpetrator and acted in concert with him when the perpetrator menaced the victim." *Commonwealth* v. *Colon*, 52 Mass. App. Ct. 725, 729 (2001). Even if the defendant had not previously realized that Gordon was armed, this would have adequately established that he knew at this point that Gordon had a weapon. See *Commonwealth* v. *Norris*, 462 Mass. 131, 140 (2012).

the judge explicitly instructed the jury that it was the Commonwealth's burden to prove beyond a reasonable doubt that the defendant knew his coventurer was armed. No such instruction was requested, or given, with respect to the three other charges, those of which the defendant was convicted. The instructions included the correct statement that the Commonwealth must prove beyond a reasonable doubt that "at the time the defendant knowingly participated in the commission of the crimes charged, here, home invasion, armed assault on [*sic*] a dwelling and assault by means of a dangerous weapon, . . . he had or shared the intent required for these crimes." But the subsequent instructions on intent did not go to knowledge of the gun. They went to knowledge that the house was occupied (in the case of the home invasion instruction); intent to cause apprehension of imminent bodily harm and intent to commit a felony (in the case of the armed assault in a dwelling instruction); and intent to commit assault (in the case of the assault by means of a dangerous weapon instruction). This did not adequately inform the jury of the element of each offense that the defendant have knowledge of the gun. See *Commonwealth* v. *Bolling*, 462 Mass. 440, 451 (2012) ("The judge's general instruction that a defendant must share the intent required for the offense with the codefendant was not sufficient to apprise the jury of the requirement that the defendant knew that [the coventurer] was armed" when the defendant was charged with armed assault with intent to murder).

We held in *Commonwealth* v. *Dosouto*, 82 Mass. App. Ct. 474, 481 (2012), that there was no error where a judge did not specifically instruct on knowledge that the coventurer had a weapon but "the instructions repeatedly emphasized . . . that the defendant must 'knowingly participate[]' 'in the commission . . . of the armed robbery, with the intent required to commit an armed robbery.' " In *Commonwealth* v. *Palmer*, 59 Mass. App. Ct. 415, 424 (2003), we observed, "Although it would have been better if the judge had specifically stated that the jury had to find the defendant knew that some other individual was armed with a dangerous weapon, we think the words used by the judge conveyed the substance of that idea. The jury were told they had to find that the defendant was present with

knowledge that some other individual intended to commit the specific crime of masked armed robbery — in other words, that the other person was armed."

As the name "home invasion" does not on its face indicate the presence of a weapon, the instruction on that count was deficient; neither *Dosouto* (armed robbery) nor *Palmer* (masked armed robbery) has any bearing on the question. The names of two other offenses of which the defendant was convicted, however, do indicate that the principal must be armed: armed assault in a dwelling and assault by means of a dangerous weapon. And the jury were told, at the outset of the instructions, that it was necessary to find that the defendant "knowingly participated in the commission of" the named crimes with "the intent required for" those crimes.

As described above, *Dosouto* emphasized that an instruction like the latter one was given repeatedly. Nonetheless, even assuming *Dosouto* and *Palmer* can be read to mean that the requirement of instructing on the element that a joint venturer must have knowledge of a weapon can, in general, be met by a single instruction that a joint venturer must be found to have knowingly participated in a crime the name of which makes clear that it cannot be committed without a weapon (something we need not decide), the instructions here with respect to armed assault in a dwelling and assault by means of a dangerous weapon did not suffice. "[W]hen viewed as a whole," *Commonwealth v. Dosouto*, 82 Mass. App. Ct. at 481, as the instructions must be, the instructions here did not convey to the jury that they were required to find, as an element of each of the offenses for which he was convicted, that the defendant knew of the gun. In light of the failure to give a knowledge-of-the-gun instruction on the home invasion, armed assault in a dwelling, and assault by means of a dangerous weapon charges, the judge's careful explanation that the jury had to find beyond a reasonable doubt that the defendant knew his coventurer possessed a firearm before they could convict him of the charge of possession of a firearm in the commission of a felony (the charge of which he was acquitted) could only have been taken to imply that no such requirement existed for the other three offenses.

The defendant failed to request the knowledge-of-the-gun

instructions, and so he is entitled to reversal and a new trial only if the failure to give them created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Bolling*, 462 Mass. at 452. It is settled law that the "failure to instruct the jury that they were required to find an essential element of [a] crime, namely that the defendant knew the perpetrator was armed, in order to convict the defendant . . . on a joint venture basis result[s] in a substantial risk of a miscarriage of justice with respect to [that] conviction." *Commonwealth* v. *Colon*, 52 Mass. App. Ct. 725, 731 (2001). While that risk is inherent, it was manifest in this case, where the jury clearly had questions about when the defendant became aware of the gun. During their deliberations, the jury asked with respect to "the indictment of possession of a firearm, Element Number Three, . . . 'Defendant knew that his co-venturer possessed a firearm,' . . . at what stage in the crime does he have to know about the possession? Does the defendant have to know about the gun or do any three of them have to know about the gun?" The judge's accurate response to the question — that the Commonwealth had the burden to prove the defendant knew about the firearm while he and his coventurers were engaged in the commission or attempted commission of a felony — addressed only the indictment for possession of a firearm in the commission of a felony, the charge with respect to which the jury had been adequately instructed as to the defendant's knowledge of the gun. As we have noted, the jury acquitted on that charge.

4. *Conclusion.* Although the defendant's motion to suppress was properly denied and there was sufficient evidence to support the convictions, because the inadequate jury instructions created a substantial risk of a miscarriage of justice, the judgments of conviction are reversed and the verdicts set aside.

*So ordered.*