After a jury trial, the defendant was convicted of armed assault with intent to murder, assault and battery by means of a dangerous weapon, threatening to commit a crime, and assault by means of a dangerous weapon.[2] In April, 2016, his motion for new trial was denied. He now appeals from that denial, arguing that there was insufficient evidence to prove that he was a joint venturer in the charges alleging use of a weapon (a knife), and that the judge's instruction on joint venture was improper, creating a substantial risk of a miscarriage of justice. We affirm.
Background. The jury heard the following evidence. On March 9, 1999, the victim visited a cellular telephone store in Boston with two friends, and then walked to Downtown Crossing, a Massachusetts Bay Transportation Authority (MBTA) train station, to take the Ashmont train home. While walking to the train station, one of the victim's friends got into an argument with two individuals (later identified as the defendant and his brother, Andre[3] ). After the argument, the victim and his friends continued into the train station and sat on the bottom steps of a stairwell that entered directly onto the Red Line platform. About five minutes after they arrived, the defendant and his brother entered the same platform from a different direction (through the Orange Line tunnel). It was rush hour and the station was crowded.
The defendant and Andre approached the group sitting on the stairs. When the two were approximately five to six feet away from the victim and his group, the victim stood up and the defendant said, "Let's take this upstairs, it'll just be a couple of niggers fighting," and then, "You know you're going to die tonight." Andre moved closer toward the victim, and, immediately before he did, the victim heard someone say, "Get him." Thereafter, he was "tussling" with Andre, until he started running up the stairs to get away and he saw a knife in Andre's hand. As he was running up the stairs, the victim felt Andre grabbing his leg so he "kicked back and still kept running." Both the defendant and his brother chased the victim up the stairs and Andre began stabbing the victim with his knife; at the same time, the defendant was yelling, "You're going to die tonight, you're going to die."
Lieutenant Nancy O'Loughlin, an MBTA plainclothes officer, and her team were patrolling the station and saw the incident. When O'Loughlin saw Andre with the knife, she and the other officers showed their badges. O'Loughlin then began "screaming at the top of her lungs, 'Police, stop. Police, stop.' " She tried to grab Andre's arm as he was swinging the knife; she saw him stab the victim three times before she could get control of him. In the end, the victim was stabbed in the leg, the head and the face before Andre was tackled to the ground and the police were able to retrieve the knife from his hand.[4] As the officers were trying to get control of Andre, the defendant, who was only two feet away, started kicking the victim (who was lying on the ground in a "fetal position") in the face and head with his "brown Timberlane boots."[5] The victim went to the hospital by ambulance.
Discussion. a. Sufficiency of evidence. The defendant first argues that there was insufficient evidence to support his conviction on counts one, two and six (the charges involving a weapon) on the theory of joint venture. He claims there was no evidence showing a prearrangement between Andre and him establishing that he knew that his brother was carrying a knife. In fact, Andre testified at trial that his brother had no idea he was carrying the weapon; during the incident, Andre testified, his brother was standing on Andre's left, but the knife was in his right pocket and was not visible to the defendant when Andre took it out.
" 'A joint venture is established by proof that two or more individuals "knowingly participated in the commission of the crime charged ... with the intent required for that offense." ' ... '[W]e view the evidence presented to support the existence of a joint venture "in the light most favorable to the Commonwealth," recognizing also that the venture "may be proved by circumstantial evidence." ' " Commonwealth v. Winquist, 474 Mass. 517, 521 (2016) (citation omitted). "[A]n anticipatory compact is not necessary for joint venture liability, as long as 'at the climactic moments the parties consciously acted together in carrying out the criminal endeavor.' " Commonwealth v. Allison, 434 Mass. 670, 676 (2001), quoting from Commonwealth v. Fidler, 23 Mass. App. Ct. 506, 513 (1987). We review a judge's determination about the existence and scope of a joint venture under the abuse of discretion standard. Winquist, supra.
Here, we are persuaded that the evidence was sufficient to support the guilty verdicts, including those for the crimes involving a weapon. The jury, after hearing the evidence, reasonably could have concluded that, when Andre pulled out the knife during the confrontation with the victim at the bottom of the stairs, the defendant, standing only a few feet away, saw the knife, and thereafter yelled at the victim that he was "going to die [that night]." What followed permitted an inference that the brothers shared the intent to murder and assault and batter the victim with the weapon-at least from the moment when Andre drew his knife and both brothers chased the victim up the stairs. Ibid. The defendant thereafter continued the assault (after O'Loughlin pulled Andre off the victim) by kicking the victim in the head and face multiple times with his booted foot. Here, there was ample evidence that, in the confrontation with the victim, the defendant was acting in concert with his coventurer brother in provoking and carrying out the fight.
b. Jury instruction. Although the defendant did not object to the instruction at trial, he now argues that the trial judge improperly instructed the jury on the law pertaining to joint venture in a crime involving a weapon. He contends that, by failing to instruct the jury that the Commonwealth must prove that the defendant knew his coventurer had a weapon in order to convict him of crimes alleging the use of a weapon, the judge relieved the Commonwealth of its burden to prove an essential element of the crime, thereby creating a substantial risk of a miscarriage of justice. We disagree.
It is true that the Commonwealth "bear[s] the burden of proving only that a joint venturer had knowledge that a member of the joint venture had a weapon where the conviction on a joint venture theory is for a crime that has use or possession of a weapon as an element." Commonwealth v. Britt, 465 Mass. 87, 100 (2013). In this case, the judge did not specifically instruct the jury on that principle and it would have been preferable if he had. Commonwealth v. Palmer, 59 Mass. App. Ct. 415, 424 (2003). However, the omission did not create a substantial risk of a miscarriage of justice on the facts of this case because "the words used by the judge conveyed the substance of that idea." Ibid. Compare Commonwealth v. Dosouto, 82 Mass. App. Ct. 474, 481 (2012), where we said, "[a]lthough the judge did not state specifically that proof includes the requirement that the defendant must know one of his companions is armed, when viewed as a whole, the instructions repeatedly emphasized not just that the defendant must share the intent of the assailants but also (1) that the defendant must 'knowingly participate[ ]' 'in the commission ... of the armed robbery, with the intent required to commit an armed robbery,' and (2) that the defendant's intent could be inferred 'from his knowledge of the circumstances and any subsequent participation in the crime.' "
Armed assault with intent to murder and assault and battery by means of a dangerous weapon each contain an element requiring the possession of a weapon, and the jurors were so instructed. See G. L. c. 265, §§ 15A(b ), 18(b ). The jury also were instructed that, in order to convict the defendant under a joint venture theory, the Commonwealth first was required to prove beyond a reasonable doubt that Andre committed the crimes of assault and battery by means of a dangerous weapon and assault with intent to kill.[6] Finally, the jurors were told that the Commonwealth "has to prove that [the defendant] shared the mental state, and we'll be talking about intent in a moment, shared the mental state of Andre Campbell.... [I]t has to prove that [the defendant] was a participant.... [T]hat he was seeking in some way, as I've described it, to make the crime succeed."
From those instructions, in finding the defendant guilty, the jury likely inferred that the defendant knew that Andre had a knife at least at the "climactic moment" when they both chased the victim up the stairs, with Andre holding a knife in his hand and the defendant yelling, "You're going to die tonight." See Allison, 434 Mass. at 676. Reviewing, as we must, the final charge in its entirety, we are persuaded that the judge's omission did not materially influence the guilty verdicts and, thus, did not result in a substantial risk of a miscarriage of justice. Palmer, supra at 426.
Order denying motion for new trial affirmed.

The defendant did not file a direct appeal from the convictions. He was acquitted of a second charge of assault and battery by means of a dangerous weapon (count three), and assault and battery on a police officer (count five).

Because the defendant and his brother share the same last name, we refer to his brother by his first name to avoid confusion.

Andre's knife sliced the victim's pant leg, as well as his hooded sweatshirt and the hat that he was wearing. Andre also slashed O'Loughlin's coat while she was trying to get him into custody.

O'Loughlin testified that the defendant began kicking the victim approximately two minutes after she saw Andre initially pull out the knife; the entire incident lasted about five minutes.

For the charge of assault and battery by means of a dangerous weapon, the judge instructed the jurors that the Commonwealth had to prove that Andre intentionally and without justification touched the victim, without the victim's consent, with the knife (admitted as exhibit 7); as to assault with intent to kill, the jurors were told that the Commonwealth had to prove that Andre "intentionally threatened [the victim] with the knife, and that he specifically intended to kill him."