## Commonwealth *vs.* Andy O. Reveron.

No. 08-P-959.

Hampden. February 4, 2009. - October 7, 2009.

Present: McHugh, Mills, & Graham, JJ.

*Practice, Criminal,* Indictment, Dismissal, Grand jury proceedings. *Grand Jury. Evidence,* Joint venturer. *Homicide.*

A Superior Court judge correctly granted a motion to dismiss indictments charging assault and battery with a dangerous weapon, armed assault with intent to murder, and armed robbery, where a grand jury heard no evidence that the defendant was present during the commission of the crimes, and where the evidence before the grand jury did not establish probable cause under a nonpresence joint venture theory, because, even accepting that a defendant knew one or more of his friends was armed with a dangerous weapon, consciousness of guilt evidence before the grand jury did not warrant an inference that the defendant had knowledge that a robbery would take place and a shared intent to bring it about. [357-359]

A Superior Court judge correctly granted a motion to dismiss an indictment charging murder in the first degree, where a grand jury heard no evidence to support theories of premeditation or extreme atrocity or cruelty, and where the evidence before the grand jury did not establish probable cause to believe that the defendant had knowledge of, or shared the intent for, the commission or attempted commission of armed robbery, a felony. [359-360]

Indictments found and returned in the Superior Court Department on June 28, 2007.

A motion to dismiss was heard by *Cornelius J. Moriarty, II,* J.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

*David P. Hoose* for the defendant.

McHugh, J. In June, 2007, a grand jury indicted the defendant, Andy O. Reveron, on charges of murder in the first degree, G. L. c. 265, § 1 (count one); assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(*b*) (counts two and

five); armed assault with intent to murder, G. L. c. 265, § 18(*b*) (counts three and six); armed robbery, G. L. c. 265, § 17 (count four); and conspiracy to violate the controlled substance laws, G. L. c. 94C, § 40 (count seven).[1] In January, 2008, the defendant moved to dismiss counts one through six on the ground that the grand jury heard insufficient evidence to support them. A judge allowed the motion with respect to counts two through six and with respect to so much of count one as alleged murder in the first degree. The Commonwealth appeals and we affirm.

*Background.* A grand jury heard the following evidence regarding the events of April 14, 2007, that led to the present charges. On that day, Raymond Alicea packed $12,000 in cash into his Chevy Blazer vehicle and drove from North Adams to Springfield with the aim of buying 250 grams of cocaine. With him were his friends Grant Amos and Jeremy Deane, the latter of whom told Alicea he knew "people" in Springfield who would sell him the cocaine.

As the trio drove down Knox Street in Springfield, both Alicea and Deane spotted acquaintances, Alicea a man named "Pito" and Deane the defendant, someone with whom he formerly sold drugs as part of a "big team" of dealers. Conversations about drug purchases ensued and the defendant ultimately made a telephone call or calls, after which he said that some friends of his would arrive shortly. After about ten minutes, two men appeared, one wearing a red "hoodie" (hooded sweatshirt) and the other a green one. The defendant introduced the men to Alicea, who asked if they would sell him 250 grams of cocaine. The man in the red hoodie agreed to do so and said he would take Alicea to his girlfriend's house where they would complete the transaction. Alicea stated that he made a lot of money and "if what they [were] saying was good, he would . . . keep coming back to them."

Everyone except the defendant got in the Blazer and Alicea drove off. The man in the red hoodie directed Alicea to drive to 35 Longhill Street. While they were driving, Alicea handed a pistol to Deane, but it is unclear what Deane did with it. In any event, when they arrived at 35 Longhill Street, the man in the red hoodie told Alicea "to pull into the back of the building"

---

[1] The defendant concedes that evidence supported count seven.

and then made a cellular telephone call, ostensibly to his girlfriend, stating, "Baby, we are here."

After Alicea parked, he and Deane got out, accompanied by the man in the red hoodie. Alicea went to the rear passenger door where he removed from a speaker box a clear plastic bag containing $12,000 in cash arranged in five to ten flat stacks. As Alicea started to pocket the bag, the man in the red hoodie shot him without warning. He then shot Deane and Amos before fleeing with the cash and the man in the green hoodie.

Alicea died from his wounds later that night. The next day, Deane and Amos identified the defendant from a photographic array. When police interviewed Deane about two weeks later, he recalled that the defendant had seemed "kind of distant" when he talked to him on the day of the shooting. Deane explained that "he wasn't as friendly to me like he would normally be. He introduced [us] to these guys and didn't say too much to me." Deane also said that he telephoned the defendant to tell him he had been shot and the defendant kept saying "no way."

When police questioned the defendant, he admitted that he had seen Deane on the day of the shooting, but denied introducing him to anyone. The defendant said that Deane was alone and that he had declined the defendant's invitation to join him while he shopped for party clothes. The defendant said he went shopping anyway and then went to a party sometime between 2:00 and 3:00 P.M. The defendant's cousin, Miguel Guzman, however, gave police a statement that contradicted the defendant's. The cousin said he saw the defendant with Deane and two other men and was certain that the defendant did not go to the party until after 4:00 P.M.

*Discussion.* 1. *Standard.* A "grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him." *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). Although this standard is "considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding," *Commonwealth* v. *O'Dell*, 392 Mass. 445, 451 (1984), it serves "to strike down indictments in cases where a grand jury has heard no evidence identifying the defendant as the perpetrator of an offense or . . . evidence . . . that would support an inference of the defendant's involvement."

*Commonwealth* v. *Club Caravan, Inc.*, 30 Mass. App. Ct. 561, 567 (1991). This case is of the latter type.

2. *Joint venture.* a. *Counts two through six.* The judge correctly found that the evidence before the grand jury did not establish probable cause to arrest the defendant for assault and battery with a dangerous weapon, armed assault with intent to murder, or armed robbery (counts two through six). Because, as the Commonwealth concedes, nothing indicated that the defendant was present during the robbery, those counts can only stand if there was probable cause to arrest him under a nonpresence joint venture theory. See G. L. c. 274, § 2. Such a theory, which is also a theory that the defendant was an accessory before the fact, see *Commonwealth* v. *Harris*, 74 Mass. App. Ct. 105, 110 (2009), required evidence that the defendant "participated in committing the offense[s], by counseling, hiring or otherwise procuring the principal, [or] by agreeing to stand by, at, or near the scene to render aid, assistance or encouragement." *Commonwealth* v. *Tavares*, 61 Mass. App. Ct. 385, 388-389 (2004), quoting from *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 242 (1982). Conviction under this theory "requires 'something more than mere acquiescence,' although not necessarily physical participation, 'if there is association with the criminal venture and any significant participation in it.' " *Commonwealth* v. *Raposo*, 413 Mass. 182, 185 (1992), quoting from *Commonwealth* v. *Morrow*, 363 Mass. 601, 609 (1973). Therefore, it is clear that conviction as an accessory before the fact requires "not only knowledge of the crime and a shared intent to bring it about, but also some sort of act that contributes to its happening." *Raposo, supra.* See *Commonwealth* v. *Ambers*, 370 Mass. 835, 839 (1976) (a nonpresent joint venturer must "intentionally encourage or assist in the commission of a crime and have the requisite mental state").[2]

Indictment on counts two through six, therefore, required at a

---

[2]Our discussion of the presence/nonpresence distinction is based on the way we have approached the subject of joint venture since the decision in *Commonwealth* v. *Bianco*, 388 Mass. 358, *S.C.*, 390 Mass. 254 (1983). After the trial of the instant case, that approach, though not the underlying substantive law, was altered by the court's decision in *Commonwealth* v. *Zanetti,* 454 Mass. 449 (2009), which shifted "the language of joint venture to the language of aiding and abetting [but did] not enlarge or diminish the scope of existing joint venture liability." *Id.* at 468. Under the court's new formulation, the jury

minimum probable cause to believe that the defendant knew the man with the red hoodie had a dangerous weapon with which he planned to assault and rob the victims. See, e.g., *Commonwealth* v. *Watson*, 388 Mass. 536, 544 (1983), *S.C.*, 393 Mass. 297 (1984); *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988). We accept for present purposes the possibility that the size of the contemplated drug deal coupled with the common nexus between guns and drugs was sufficient to conclude that the defendant probably knew that either the man wearing red or the man wearing green, or both, had a gun.[3] See generally *Commonwealth* v. *Cannon*, 449 Mass. 462, 470 (2007). But even if the defendant probably knew that one or more of his friends were armed, the evidence before the grand jury did not warrant an inference that he knew a robbery, rather than a drug deal, was afoot. See generally, e.g., *Commonwealth* v. *Smith*, 413 Mass. 275, 281-282 (1992). Compare, e.g., *Cannon*, *supra* at 469-470. One cannot reason backwards and conclude that simply because it occurred, the defendant must have known the robbery was going to happen.

We agree with the motion judge that "the defendant's change in attitude toward Deane and his false denial of participation in the drug transaction are simply insufficient to establish the requisite knowledge and shared intent." That the defendant seemed "kind of distant" and "wasn't as friendly" may evidence consciousness of guilt, see *Commonwealth* v. *O'Laughlin*, 446 Mass. 188, 200 (2006), on which the Commonwealth relies,[4] as

is not required to determine a defendant's liability as a principal or as a joint venturer, and there is no difference between the language used to instruct on a presence or a nonpresence joint venture theory. Instead, in every case involving participation by more than one person in a single offense, the jury is to determine whether the "Commonwealth has proved beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, alone or with others, with the intent required for that offense." *Id.* at 467-468. The new formulation makes no change to the inquiry we are required to undertake here, i.e., whether the record shows the existence of probable cause to believe that the defendant knowingly participated in the armed robbery with the intent required for commission of that offense.

[3]Indeed, evidence of Alicea's own possession of a pistol is a testament to that common link.

[4]The Commonwealth's reliance on the decision of the Supreme Judicial Court in *Commonwealth* v. *O'Laughlin*, 446 Mass. 188 (2006), though, is severely undercut by the recent opinion of the United States Court of Appeals

may his false statements to police. See *Commonwealth* v. *Laval-ley*, 410 Mass. 641, 649-650 (1991). But the drug deal in which the defendant is alleged to have involved himself was one that carried a fifteen-year minimum mandatory State prison sentence, see G. L. c. 94C, § 32E(*b*)(4), the specter of which was surely sufficient to produce a certain amount of wariness and false accounts to investigators. Cf. *O'Laughlin* v. *O'Brien*, 568 F.3d 287, 303 (1st Cir. 2009) (although the defendant's reluctance to come to the police station and his agitation during a police interview "could indicate consciousness of guilt for some crime, such as possessing crack cocaine [which the evidence shows he admitted to being concerned about], it is an impermissible inferential leap for a jury to find this behavior significantly probative of whether [the defendant] committed . . . a brutal attack"). In any event, consciousness of guilt alone is not enough to convict the defendant of the firearm charges. See, e.g., *Commonwealth* v. *Darnell D.*, 445 Mass. 670, 674 (2005). In the absence of evidence suggesting that the defendant knew that the men he called contemplated a robbery rather than a drug sale, the consciousness of guilt evidenced was insufficient to support the charges in counts two through six.

b. *Count one (murder in the first degree)*. The motion judge set out the three theories of murder in the first degree: (1) premeditation; (2) extreme atrocity or cruelty; and (3) murder committed during the commission or attempted commission of a life felony. We agree that the grand jury did not hear "an iota of evidence" to support the first or second theory. As to the third, because armed robbery is the life felony at issue, an indictment charging murder in the first degree required probable cause to believe that the defendant knew the dealers were armed and that he shared with them the specific intent to rob Alicea. As dis-

for the First Circuit in *O'Laughlin* v. *O'Brien*, 568 F.3d 287 (1st Cir. 2009). There, the court, after analyzing the Supreme Judicial Court's opinion in *O'Laughlin*, held that the evidence of consciousness of guilt was insufficient to support O'Laughlin's conviction and ordered the Federal District Court to grant a writ of habeas corpus discharging him. Along the way, the court rejected the Commonwealth's suggestion that O'Laughlin's " 'uneasy and distant' demeanor" evidenced anything but minimally probative consciousness of guilt under the circumstances the case presented. *Id.* at 303.

cussed above, the evidence in the record is insufficient to support the existence of probable cause to believe either.[5]

In sum, we affirm the motion judge's decision to dismiss counts two through six of the indictment and so much of count one as alleged murder in the first degree.

*Order of dismissal affirmed.*

---

[5]Adequacy of the evidence to support the rest of count one, which charges murder in the second degree, is not before us. The defendant filed a petition pursuant to G. L. c. 211, § 3, to address that issue and did not raise it in this appeal. The petition was denied by a single justice of the Supreme Judicial Court.