Commonwealth *vs.* Daniel Lee Lopez
(and three companion cases[1]).

No. 10-P-855.

Essex. March 16, 2011. - September 15, 2011.

Present: Mills, Brown, & Wolohojian, JJ.

*Homicide. Robbery. Felony-Murder Rule. Grand Jury. Practice, Criminal,* Indictment, Dismissal.

A Superior Court judge erred in allowing a criminal defendant's motion to dismiss an indictment charging murder in the first degree on a theory of felony-murder, as a principal, with unarmed robbery as the predicate felony, where, although the evidence before the grand jury permitted them to infer that the robbery was achieved with a single blow, all the evidence taken together was sufficient to establish probable cause that the defendant carried out the robbery with conscious disregard of the risk to the victim's life [393-396]; however, the judge correctly allowed the motion to dismiss of a codefendant charged as a joint venturer, where there was no evidence of a preexisting plan with the defendant, nor any evidence that the codefendant knew the defendant planned to rob or to attack the victim [396-397].

INDICTMENTS found and returned in the Superior Court Department on October 2, 2009.

Motions to dismiss were heard by *Timothy Q. Feeley,* J.

*David F. O'Sullivan,* Assistant District Attorney (*James P. Gubitose,* Assistant District Attorney, with him) for the Commonwealth.

*Aviva E. Jeruchim* for Daniel Lee Lopez.

*Nona E. Walker,* Committee for Public Counsel Services (*Stephen J. Wright* with her) for Ronny Ramos.

WOLOHOJIAN, J. A grand jury indicted the defendants of the crimes of unarmed robbery, see G. L. c. 265, § 19(*b*), and murder in the first degree on a theory of felony-murder, see G. L. c. 265, § 1. The defendants moved to dismiss the murder indict-

[1]One against Daniel Lee Lopez and two against Ronny Ramos.

ments on the ground that the grand jury heard insufficient evidence to support them.[2] In an extremely thoughtful memorandum of decision and order, a Superior Court judge allowed the motions, from which the Commonwealth now appeals. See Mass.R.Crim.P. 15(a)(1), as appearing in 422 Mass. 1501 (1996). Because we conclude that the evidence before the grand jury was sufficient to support the indictment on a charge of murder in the first degree against Daniel Lee Lopez but insufficient against Ronny Ramos, we affirm in part and reverse in part.

*Background.* The evidence before the grand jury, taken in the light most favorable to the Commonwealth, showed the following. See *Commonwealth* v. *Levesque*, 436 Mass. 443, 444 (2002). On the night of July 30, 2009, Ramos attended a birthday party on West Dalton Street in Lawrence (city), an address in the city's so-called "Stadium projects." Police officers broke up the party at around 10:00 P.M. Ramos and others left and walked to the nearby corner of Osgood and West Dalton Streets, where a group was gathering. Some in the group were seen carrying baseball bats, and some were heard shouting "SP," a street gang name standing for "Stadium projects."

Lopez arrived at the corner in a taxicab. He greeted Ramos and one Wainer Caba. Lopez told Caba that he had just come from buying new clothes and planned to "go do something." Lopez alone then entered a building in the Stadium projects and returned moments later, still alone. Caba asked Lopez what he was doing, and Lopez responded, "I'm abouts to go do me." Caba took this to mean that Lopez planned to go do something by himself.

Around the same time, a restaurant in the city received a telephone order for Chinese food to be delivered to the Stadium projects. The address given was 230 Osgood Street, which was near the corner of Osgood and West Dalton Streets. The caller was a young male with a Spanish accent; a female voice could be heard giggling in the background. Investigating officers later learned that the resident of 230 Osgood Street did not place the food order. Officers also learned that the telephone call to the

---

[2]This appeal does not involve the unarmed robbery indictment against either defendant. Lopez did not move to dismiss that charge below, and Ramos does not appeal from the denial of his motion to dismiss it.

restaurant was made from a telephone registered to one Jose Acosta, whose son lent it to Lopez earlier on the evening of the crime.

Thu Nguyen had worked for the restaurant on and off for fifteen years, returning most recently in early 2009 after a "retirement" due to a surgery.[3] Nguyen drove to the corner of Osgood Street, where he stepped out of the car. He approached a two- or three-step staircase in front of 230 Osgood Street. At that moment, Lopez stood at the top of the small staircase and three or four others stood behind and to the side of him.

Nguyen started to ascend the stairs, delivery bag in hand. Lopez at first motioned as if to hand Nguyen money but then, without warning, delivered a single closed-fist blow to Nguyen's head. Entirely caught off guard, Nguyen had no time to drop the bag, to balance, or to defend himself. The force of the punch caused him to fall backwards onto the pavement below. He struck his head against the pavement with audible impact, and most of the onlookers fled. Nguyen began to gasp for air and to foam at the mouth. Lopez got down on his knees next to Nguyen and searched Nguyen's pockets. Ramos stood a few feet from Nguyen's head, holding the bag of Chinese food. Lopez took $125 from Nguyen's pockets and ran away, in concert with Ramos.

A security guard found Nguyen within minutes. Nguyen was unconscious but still breathing. His car was parked, running, with the driver's-side door still open. Nguyen died in the hospital fifteen hours later, from the trauma to his head. His skull had been fractured by the impact with the sidewalk.

On the day following the attack, Lopez told a friend that he punched Nguyen because he was "hungry" and "wanted some liquor." Lopez said that he arrived at the liquor store with the stolen money five minutes before it closed, and that he ate the Chinese food. Ramos, for his part, admitted to a police officer that he saw Nguyen lying on the sidewalk but said that he did not know what had happened to him. Ramos denied knowing

---

[3]The grand jury heard no testimony regarding the nature of Nguyen's surgery or the length of his "retirement," nor did it hear any testimony regarding Nguyen's age. While the grand jury could have inferred that Nguyen was at least middle aged, there was no testimony to suggest that Nguyen was elderly or in a visibly weakened state.

Lopez, but the name "Beb" — a variation on Lopez's street name, "Bebe" — appeared in the contact list of Ramos's telephone.

In early August, Lopez went to New Hampshire to stay with one Julia Elswick, a family friend. When Elswick asked him why he was there, Lopez told her that he "messed up" and that "the cops [were] looking for [him] because [he] hit a guy and stole Chinese food." When asked if he had acted alone, Lopez told Elswick that there were "other people" but did not give names. Police eventually located Lopez at Elswick's residence and arrested him.

*Discussion.* To sustain an indictment, "the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him" for the crimes charged. *Commonwealth* v. *McCarthy,* 385 Mass. 160, 163 (1982). *Commonwealth* v. *Moran,* 453 Mass. 880, 883 (2009). "Probable cause requires sufficient facts to warrant a person of reasonable caution in believing that an offense has been committed." *Levesque,* 436 Mass. at 447. We stress that probable cause is "considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding." *Commonwealth* v. *O'Dell,* 392 Mass. 445, 451 (1984). See *Commonwealth* v. *Riley,* 73 Mass. App. Ct. 721, 726-727 (2009). The standard "offers no sure mechanical guide for assessing sufficiency, but it has been employed primarily to strike down indictments in cases where a grand jury has heard . . . *no* evidence whatever that would support an inference of the defendant's involvement." *Commonwealth* v. *Goldstein,* 54 Mass. App. Ct. 863, 866-867 (2002), quoting from *Commonwealth* v. *Truong Vo Tam,* 49 Mass. App. Ct. 31, 37 (2000).

The defendants were indicted for murder in the first degree on a theory of felony-murder — Lopez as a principal and Ramos as a joint venturer — with unarmed robbery as the predicate offense. "Felony-murder may only be premised on unarmed robbery if the Commonwealth [shows] that the defendant committed the felony with a conscious disregard for human life." *Commonwealth* v. *Scott,* 428 Mass. 362, 364 (1998). See *Commonwealth* v. *Cook,* 419 Mass. 192, 205 (1994). The judge reasoned that death resulting from a single punch is an inherently unforeseeable occurrence inconsistent with conscious disregard for life and, therefore, dismissed the murder indictments.

In the crime of felony-murder, a defendant's intent to commit the predicate felony stands in for the malice aforethought required for murder.[4] See *Commonwealth* v. *Matchett,* 386 Mass. 492, 501-508 (1982). "For this theory to be tenable the nature of the felony must be such that an intent to commit that crime exhibits a conscious disregard for human life, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty." *Id.* at 507, quoting from *Commonwealth* v. *Bowden,* 456 Pa. 278, 287 (1973) (Nix, J., concurring). The felony-murder rule thus requires that the predicate felony be either dangerous to life by its nature, or dangerous to life by the manner or method of its commission. See *Matchett, id.* at 507-508; *Cook,* 419 Mass. at 205-206. A felony of this latter class — one that creates a foreseeable risk of death because of the peculiar circumstances of its commission — is a felony committed with conscious disregard of the risk to human life. See *Cook, supra; Commonwealth* v. *Netto,* 438 Mass. 686, 705 (2003).

The defendants argue that a single punch cannot establish the mental state required for murder, but only that required for manslaughter.[5] See, e.g., *Commonwealth* v. *Fox,* 7 Gray 585, 588 (1856) (if "death should ensue from an attack made with the hands and feet only, . . . the law would not imply malice, because ordinarily death would not be caused by the use of such means"); *Commonwealth* v. *Mahnke,* 368 Mass. 662, 702-703 (1975), cert. denied, 425 U.S. 959 (1976) ("[A]ccording to common experience there is no plain and strong likelihood that

---

[4]The "rationale underlying the felony-murder rule" is "to reduce the disproportionate number of accidental homicides which occur during the commission of the enumerated predicate felonies by punishing the party responsible for the homicide not merely for manslaughter, but for murder." *Commonwealth* v. *Claudio,* 418 Mass. 103, 108 (1994), quoting from *People* v. *Miller,* 32 N.Y.2d 157, 161 (1973).

[5]Conscious disregard demands conduct more dangerous than that required for involuntary manslaughter. See *Commonwealth* v. *Sneed,* 413 Mass. 387, 394 (1992); *Commonwealth* v. *Fortes,* 47 Mass. App. Ct. 214, 218 (1999). Involuntary manslaughter requires wanton or reckless conduct, that is, conduct involving "a high degree of likelihood that substantial harm will result to another." *Commonwealth* v. *Earle,* 458 Mass. 341, 347 (2010), quoting from *Commonwealth* v. *Welansky,* 316 Mass. 383, 399 (1944). Conduct evincing conscious disregard thus requires more than a mere threat of substantial physical harm; conduct supporting felony-murder liability must pose a foreseeable risk of actual loss of life.

death will follow a simple blow with the hand administered to a healthy adult — even if the victim is standing on slippery, rain-spattered pavement" [quotation marks and footnote omitted]); *Commonwealth* v. *Junta*, 62 Mass. App. Ct. 120, 122 (2004) ("[I]f only a single punch or only minor blows were involved, this would tend to negate the defendant's knowledge or imputed knowledge that he was endangering human life"). See also LaFave, Substantive Criminal Law § 15.5(d) (2d ed. 2003). As an abstract proposition, we agree that a single blow, with nothing more, normally will not support a charge of murder in the first degree.

That said, the blow is not to be viewed in isolation. Whether a particular felony (here, unarmed robbery) was committed with conscious disregard for life is a largely fact-dependent inquiry resting "upon a case-by-case analysis of the nucleus of facts in which that felony is embedded." *Commonwealth* v. *Garner*, 59 Mass. App. Ct. 350, 357 (2003). A particular felony may be committed with conscious disregard in one factual context, but without it in another. *Ibid.*

The evidence before the grand jury permitted them to infer that Lopez achieved his robbery with a blow significantly more dangerous and devastating than an ordinary punch. From his elevated position, Lopez delivered a downward closed-fist blow to Nguyen's head. See *Commonwealth* v. *Hadley*, 78 Mass. App. Ct. 405, 409 (2010). The situation was not one of mutual combat; the blow was a "sucker punch" thrown unexpectedly and without warning, in circumstances in which Nguyen was prepared only for a routine commercial transaction. Contrast *Mahnke, supra.* Lopez struck while Nguyen was holding a bag of food and was beginning to ascend the stairs. Nguyen was located below Lopez, in a position of obvious physical vulnerability. It fairly may be inferred that the circumstances were set up by Lopez so as to render Nguyen unable to defend or to balance himself, or to break his fall. All of these circumstances — particularly Nguyen's exposed position and the surprise nature of the blow — enhanced the risk that Lopez's actions would result in death.

The force of the blow was enough to propel Nguyen backwards onto the pavement below. Nguyen's head audibly struck the

ground, and Nguyen began to foam at the mouth and to gasp for air. Others fled but Lopez and Ramos apparently were unperturbed. As Nguyen lay on the pavement struggling for life, Lopez rifled through his pockets and removed the cash. He did not call for aid, or offer aid himself. Any of these acts might have undercut the inference that Lopez had acted with conscious disregard for Nguyen's life. Instead, Lopez's actions after he struck the blow reflect a profound indifference to Nguyen's condition, and bolster the inference that Lopez intended to deliver (and was unsurprised when he did deliver) a fatal blow. See *Scott*, 428 Mass. at 365. All of this evidence taken together was sufficient to establish probable cause that Lopez carried out the robbery with conscious disregard of the risk to Nguyen's life.

The final determination of Lopez's mental state is "best reserved for a petit jury to sort out" with a more complete picture of the evidence and proper instructions from the trial judge. *Goldstein*, 54 Mass. App. Ct. at 868. "To require more than was presented to the grand jury here [would] conflate[] and confuse[] the accusatory role of the grand jury, the adjudicatory role of the petit jury, and the quantum of proof required at two very different stages of criminal proceedings." *Riley*, 73 Mass. App. Ct. at 726. In sum, we think that at this stage of the proceedings, the Commonwealth met its burden with respect to Lopez's mental state.

Ramos, however, stands on a different footing. He was indicted as a joint venturer and not as a principal. To sustain the indictment against him, the Commonwealth needed to present sufficient evidence to support a finding of probable cause that Ramos "knowingly participated in the commission of the crime charged . . . with the intent required for that offense." *Commonwealth* v. *Zanetti*, 454 Mass. 449, 466 (2009). See *Commonwealth* v. *Reveron*, 75 Mass. App. Ct. 354, 357 n.2 (2009). In other words, the Commonwealth needed to show that Ramos participated in the robbery while sharing Lopez's mental state of conscious disregard for the risk to human life.

The evidence before the grand jury indicated that Lopez greeted Ramos upon arriving at the corner, and that Ramos was in a position to hear Lopez say to Caba that he planned to "go do something." The evidence also showed that, in contrast to

the onlookers who scattered after the attack, Ramos stood near Nguyen, who then was visibly in distress, and watched Lopez rifle through his pockets. Ramos then carried the bag of food and fled together with Lopez. Critically absent, however, was any evidence that Ramos knew what Lopez had in mind before the attack. There was no evidence of a preexisting plan with Lopez, nor any evidence that Ramos knew that Lopez planned to rob or to attack Nguyen. Moreover, there was no evidence that Ramos participated in the telephone call to the restaurant.

Taken together, this evidence was insufficient to sustain the indictment of murder in the first degree against Ramos on a joint venture theory. See *Commonwealth* v. *Lee*, 460 Mass. 64, 68-70 (2011). The Commonwealth did not present any evidence to suggest that Ramos knew, at or before the moment of Lopez's punch, that Lopez intended a severe and life-threatening attack upon Nguyen, or even that Lopez intended to punch and to rob Nguyen at all. For all the evidence showed, Ramos was nothing more than a bystander until the moment the robbery began. His presence and participation after the attack, together with evidence of postrobbery consciousness of guilt, were not sufficient to support an inference as to his state of mind before the fatal blow was struck. *Ibid.* See *Reveron*, 75 Mass. App. Ct. at 358-359.

So much of the order on the defendants' motions to dismiss as dismisses the indictment of Lopez on murder in the first degree is reversed, and the matter is remanded to Superior Court for further proceedings. The remainder of the order is affirmed.

*So ordered.*