NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-58                                            Appeals Court
17-P-59
17-P-70


COMMONWEALTH  vs.  ALEXANDER JOHNSON
(and two companion cases[1]).


Nos. 17-P-58, 17-P-59, & 17-P-70.

Norfolk.      November 1, 2017. - December 12, 2017.

Present:  Milkey, Blake, & Singh, JJ.


Assault and Battery by Means of a Dangerous Weapon.  Evidence,
    Joint venturer.  Practice, Criminal, Dismissal, Indictment.



    Indictments found and returned in the Superior Court
Department on March 24, 2016.

    Motions to dismiss were heard by Beverly J. Canone, J.


    Varsha Kukafka, Assistant District Attorney, for the
Commonwealth.
    Kathleen E. McKay for Alexander Johnson.
    Neil V. Madden for Jordan Williams.
    John M. Brinkman, for Michael Leary, was present but did
not argue.


    MILKEY, J.  A grand jury indicted Alexander Johnson, Jordan

Williams, and Michael Leary for assault and battery by means of

---

[1] One against Jordan Williams and one against Michael Leary.

a dangerous weapon causing serious bodily injury (ABDW-SBI). See G. L. c. 265, § 15A(c)(i). The indictments were based on a bar fight, during which Christopher Socha (the victim) was struck on the top of his head with a glass. The Commonwealth's theory was that Johnson was the one who struck the victim with the glass, and that Williams and Leary were criminally liable for aiding and abetting Johnson.[2]

Johnson moved to dismiss so much of the ABDW-SBI indictment as alleged serious bodily injury, on the grounds that the evidence presented to the grand jury failed to establish probable cause that such injury occurred. See generally Commonwealth v. McCarthy, 385 Mass. 160, 162-163 (1982). Williams and Leary moved to dismiss the ABDW-SBI indictments against them in toto, arguing that the evidence before the grand jury failed to establish probable cause that they aided and abetted Johnson's striking the victim with the glass. Before us now is the Commonwealth's appeal from the Superior Court order allowing all three McCarthy motions with respect to the

---

[2] In characterizing the liability of Williams and Leary, the Commonwealth refers to them as joint venturers. The Supreme Judicial Court has instructed that joint venture liability and aiding and abetting liability mean the same thing, while stating a preference for the terminology of the latter. See Commonwealth v. Zanetti, 454 Mass. 449, 467-468 (2009); Commonwealth v. Tavares, 471 Mass. 430, 440 n.17 (2015).

ABDW-SBI indictments.[3]  For the reasons that follow, we reinstate
the ABDW-SBI indictments against each defendant.

Background.[4]  The bar fight.  The three defendants worked
for a liquor wholesaler in Kingston.  On October 3, 2015, a
Saturday, the company held its annual party at a Plymouth
restaurant.  The party featured an "open bar," and the
defendants had a considerable amount to drink.[5]  Together with
other partygoers, they then went to another local restaurant,
the Waterfront Bar & Grille, to continue the festivities.  The
bar area of this restaurant was especially crowded that night,
and transit through it therefore was difficult.

------

[3] All three defendants were also indicted for mayhem, G. L.
c. 265, § 14, and the judge dismissed those indictments pursuant
to the defendants' McCarthy motions.  The Commonwealth does not
appeal from that portion of the judge's order.  Williams and
Leary also were indicted for assault and battery based on their
own actions in attacking the victim (separate from the glass
incident).  The judge denied the McCarthy motions with respect
to the assault and battery indictments; those indictments are
pending and are not the subject of this appeal.

[4] The grand jury heard testimony from eight witnesses, and
had before it three sets of medical records and a number of
photographs of the victim's injuries and of the crime scene.  In
addition, the Commonwealth presented five video recordings of
interviews with the defendants and two other eyewitnesses.  The
factual recitation that follows is drawn from the evidence
before the grand jury, read in the light most favorable to the
Commonwealth.  See Commonwealth v. Lopez, 80 Mass. App. Ct. 390,
391 (2011).

[5] In fact, there was evidence that the defendants began
drinking before their work party.

At one point, the victim tried to make his way to the dance floor to join his wife.  To do this, he had to engage in "the old slip and slide" through the crowd, while excusing himself to those whom he passed along the way.  When the victim reached the area where the defendants had congregated (directly next to the bar itself), Williams refused to move even after the victim placed his hand on Williams's back.  When the victim then proceeded "just try[ing] to get through," Williams stuck his leg out to trip him.  This prompted the victim to stumble while exclaiming, "Really, dude?"  Williams said, "Hey, watch yourself, old man,"[6]  to which the victim responded with an expletive.  Leary joined the fray, pushing his shoulder into the victim from behind.[7]  He also engaged in an escalating war of words, "taunting [the victim] to fight."  At that point, as the victim was moving away, a man -- later identified as Johnson -- slammed a heavy, pint beer glass onto the victim's head.  The blow, which was done with such force that the glass shattered, caused the injuries detailed below.  The victim responded by head-butting Leary.[8]  Williams then grabbed the victim, and the

---

[6] The victim was fifty-two years old; the defendants were in their mid-twenties.

[7] There was some evidence that it was Williams, not Leary, who "shouldered" the victim.

[8] There was some evidence that the victim's head-butting of Leary occurred before Johnson struck the victim with the glass.

two men tangled for a short period of time before the victim eventually pushed Williams away, ran down the stairs, and was later taken to the hospital for treatment.

The victim's injuries.  The blow to the victim's head caused extensive lacerations, totaling twenty-one centimeters in length.  These lacerations, in turn, caused the victim to bleed profusely, with his blood spilled on Williams and Leary and throughout the bar area.  The lacerations required approximately forty stitches to close.  Graphic photographs of the stitched wounds were provided to the grand jury and, during his testimony, the victim pointed to the resulting scar.  He also described a dent to his head that did not exist before the incident and that still hurt to the touch several months later.

As documented both by medical records before the grand jury and by live testimony, the victim suffered a concussion from the blow to his head, as well as a wide variety of postconcussion consequences.  These included, among others, vision problems, dizziness, headaches and other pain, and motor impairment (e.g., in walking and in reaching for objects).  The victim testified that he suffered a fractured skull from the incident, and "was bleeding out."[9]  As a result of his injuries, the victim missed

---

[9] The grand jury heard statements to the same effect made by a police detective during a video interview of one of the eyewitnesses.

one and a half months of work.  Additional evidence regarding the victim's injuries is reserved for later discussion.

Discussion.  Serious bodily injury.  The statute defines "serious bodily injury" as "bodily injury which results in a permanent disfigurement, loss or impairment of a bodily function, limb or organ, or a substantial risk of death."  G. L. c. 265, § 15A(d), inserted by St. 2002, c. 35, § 2.  "Permanent" modifies only "disfigurement," not "loss or impairment." Commonwealth v. Scott, 464 Mass. 355, 357 n.2 (2013).  At the same time, not all levels of injury qualify as "loss or impairment of a bodily function, limb or organ"; rather, the injury has to meet a certain threshold of significance.  For example, impairment of a bodily function "arises [only] when a part or system of the body . . . is significantly impeded in its ability to fulfil its role."  Id. at 359.

In assessing whether the evidence here was sufficient to support the indictment, we must, of course, keep in mind the applicable standard of review.  The question posed by a McCarthy motion is whether the grand jury were presented with "sufficient evidence to establish the identity of the accused and probable cause to arrest him."  Commonwealth v. Bell, 83 Mass. App. Ct. 61, 63 (2013), citing Commonwealth v. McCarthy, 385 Mass. at 163, and Commonwealth v. O'Dell, 392 Mass. 445, 450 (1984). This standard "is considerably less exacting than the

requirement that a judge must apply at trial." Bell, supra at 63. "All that is required is 'reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that the defendant had committed . . . an offense.'" Ibid., quoting from O'Dell, supra. "Probable cause to sustain an indictment is a decidedly low standard." Commonwealth v. Hanright, 466 Mass. 303, 311 (2013).

Applying this standard, we conclude that the grand jury readily could have found probable cause that the victim suffered serious bodily injury. Indeed, probable cause was established for all of the "three distinct routes for establishing serious bodily injury." Scott, supra at 357. First, the grand jury could have found probable cause that the attack caused the victim to have a permanent disfiguring scar on his head. Second, the grand jury could have found probable cause that the victim suffered impairment of a bodily function, such as the vision problems that the victim was experiencing. See Commonwealth v. Marinho, 464 Mass. 115, 118-119 (2013) (recognizing that significant vision impairment can constitute serious bodily injury). Third, in light of the evidence that the victim bled so profusely from his injuries, the grand jury could have found probable cause that the injury caused a substantial risk of death. The judge erred in dismissing the serious bodily injury portion of Johnson's ABDW-SBI indictment.

In ruling in Johnson's favor, the judge focused in great part on the fact that some of the victim's specific claims of injury were not supported by medical records, or perhaps even were contradicted by them. For example, she highlighted that the medical records appear to indicate that while there initially was cause for concern that the victim had suffered a skull fracture, follow-up imaging of the victim's head appears to indicate that no such fracture occurred.[10],[11] Resolution of a McCarthy motion does not require such parsing of the evidence.[12] As long has been established, the Commonwealth need not produce to the grand jury "the same type of specific evidence of each element of the offense as would be needed to support a conviction." Commonwealth v. Gallant, 453 Mass. 535, 541 (2009) (quotation omitted).[13]

---

[10] A grand juror in fact questioned the victim about this apparent discrepancy, and he responded that he could not say "for sure" whether his skull was fractured.

[11] Similarly, while the victim claimed he was at risk of "bleeding out" from a "severed" artery, the medical records do not mention this particular injury nor state that the victim almost died.

[12] Compare Marinho, supra at 119 (even at trial, testimonial evidence of victim's impairment of his vision held sufficient to support guilt beyond a reasonable doubt even though "it conflicts with some of the medical records").

[13] In addition, for present purposes, it ultimately is of no consequence whether the victim suffered a fractured skull or not, because there plainly was sufficient evidence to establish

Of course, to convict Johnson of the crime charged, the Commonwealth, inter alia, will need to prove beyond a reasonable doubt that the victim's injuries rose to the level of significance required of serious bodily injury. But that is a question appropriately resolved by the petit jury based on a full trial record and proper instructions. The grand jury -- by contrast -- serves as "an investigatory and accusatory body only," Brunson v. Commonwealth, 369 Mass. 106, 120 (1975), and it "is not the appropriate forum for reconciling subtle gradations of offenses, such as we have here." Commonwealth v. Goldstein, 54 Mass. App. Ct. 863, 868 (2002) (quotation omitted). Such issues were not for the judge to resolve based on her own evaluation of the grand jury evidence on a McCarthy motion. See Bell, supra at 64 ("A judge considering a motion to dismiss should not confuse the question of probable cause . . . with questions more properly resolved by the fact finder at trial").

Williams's criminal liability. We turn next to whether the grand jury could have found probable cause that Williams aided and abetted Johnson's actions. At trial, the Commonwealth will need to prove "beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged,

---

probable cause that he had suffered serious bodily injury in other ways.

with the intent required to commit the crime." Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009). The question before us is whether the grand jury could have found probable cause of such liability.

This is not a case where the evidence indicates that, prior to Johnson's hitting the victim with the glass, Williams was a mere bystander. Contrast Commonwealth v. Lopez, 80 Mass. App. Ct. 390, 396-397 (2011) (affirming dismissal of indictment charging felony-murder as a joint venturer, where there was no evidence before the grand jury that the defendant was anything "more than a bystander until the moment the robbery [of the decedent] began").[14] In fact, the grand jury heard evidence that Williams was the one who began the attack on the victim by tripping him. From Williams's own actions against the victim, the grand jury could have found probable cause that Williams shared Johnson's intent to commit an assault and battery on the victim.[15] Even if there was no evidence that Williams intended to cause the injuries that the victim suffered from the glass --

_____

[14] Notably, the offense in Lopez required proof that the defendant shared his alleged coventurer's mental state of "carry[ing] out the robbery with conscious disregard of the risk to [the victim's] life." Id. at 396. As discussed infra, ABDW-SBI is a general intent crime.

[15] As noted, the motion judge herself concluded that there was probable cause that Williams committed an assault and battery against the victim through his own actions. See note 3, supra.

a question we do not reach -- the Commonwealth need not prove such intent, because ABDW-SBI is a general intent crime. See Commonwealth v. Vick, 454 Mass. 418, 432 (2009) ("Assault and battery by means of a dangerous weapon causing serious bodily injury requires the Commonwealth to prove that the defendant intentionally touched the victim, however slightly; the touching was unjustified; the touching was done with an inherently dangerous weapon or an object used in a dangerous fashion; and the touching caused serious bodily injury").[16]

To be sure, to prove Williams guilty of ABDW-SBI at trial, the Commonwealth will need to prove beyond a reasonable doubt that Williams knew that Johnson was "armed" with the glass. See Commonwealth v. Gorman, 84 Mass. App. Ct. 482, 489 (2013) (in cases that depend on a coventurer's use of a dangerous weapon, the defendant's "knowledge of [the] weapon is an element of the Commonwealth's proof" [citation omitted]). However, the grand jurors could have inferred probable cause of such knowledge from the circumstances presented, which included the well-established fact that the defendants were drinking together while standing at the bar. See generally Commonwealth v. Lee, 460 Mass. 64, 69-70 (2011) (knowledge that a coventurer is armed may be inferred from circumstantial evidence).

---

[16] By contrast, mayhem requires "specific intent to maim or disfigure." Commonwealth v. Forbes, 86 Mass. App. Ct. 197, 202 (2014).

Contrary to the motion judge's premise,[17] it was not necessary for the Commonwealth to prove that Williams knew that Johnson intended to strike the victim with the glass. See Commonwealth v. Sexton, 425 Mass. 146, 152 (1997) (sufficient evidence to support guilty verdict for assault and battery by means of a dangerous weapon as a joint venturer even without defendant's prior knowledge that the joint venturer intended to use the dangerous weapon [concrete pavement] "to effectuate the attack"). "[T]here is no need to prove an anticipatory compact between the parties to establish joint venture . . . if, at the climactic moment the parties consciously acted together in carrying out the criminal endeavor." Ibid. (quotation omitted). Significantly, there was evidence that after Johnson struck the victim with the glass, Williams did not retreat from the combat, but instead went after the victim himself. Compare ibid.[18] See Commonwealth v. Lugo, 89 Mass. App. Ct. 229, 232-233 (2016)

---

[17] The motion judge framed the issue as whether "there was probable cause that . . . Williams had knowledge that Johnson intended to assault [the victim] with a glass or bottle [and whether Williams] shared that intent and by agreement [was] willing and available to help if necessary." She then explained that she was dismissing the ABDW-SBI indictment against Williams because "[t]here is no evidence that . . . Williams knew that a glass or bottle would be used on or thrown at" the victim.

[18] In Sexton, there was evidence that the defendant himself kicked the victim while his brother slammed the victim's head against the concrete pavement. Id. at 152.

(Cypher, J.).[19]  Even under the judge's formulation, the grand jury could have found probable cause that Williams not only stood ready and willing to come to Johnson's aid, but actually did so.  See Commonwealth v. Clarke, 418 Mass. 207, 215 (1994) (the fact that the defendant "stood ready and willing to aid the [other coventurers]" found significant to sustain a conviction for joint venture).

Leary's criminal liability.  Leary's situation is very close to that of Williams, with one potentially significant exception, which pertains to Leary's actions following Johnson's blow to the victim's head.  Specifically, there does not appear to be any showing that Leary continued to attack the victim after that occurred.  Rather, the evidence was that directly after Johnson used the glass, the victim head-butted Leary, and Leary then turned away from the combat.

Nevertheless, given the relatively low bar applicable to establishing probable cause at the grand jury stage, we conclude that the judge erred in dismissing the ABDW-SBI indictment even with respect to Leary.  Although the confrontation between the defendants and the victim unfolded rapidly and with little evidence of reflective thought, there was evidence that Leary played a key role in its escalation.  In addition, there was

---

[19] In Lugo, we found it significant that the defendant himself kicked the victim after his coventurer pulled out a knife and began stabbing him.  Id. at 232-233.

evidence to support probable cause that Leary shared Johnson's intent to attack the victim (while knowing that Johnson was armed with a glass), and that Leary in fact actively participated in an assault and battery of the victim.  Thus, the grand jurors could have concluded that Leary and Johnson were acting in concert and with shared intent.  In our view, the Commonwealth presented an adequate showing of Leary's potential liability for aiding or abetting an ABDW-SBI to survive a McCarthy motion.

Disposition.  We vacate so much of the judge's December 1, 2016, order as allowed the dismissal of the serious bodily injury portion of the ABDW-SBI indictment against Johnson and that indictment is reinstated in full.  We also vacate so much of the December 1, 2016, order as allowed the dismissal of the ABDW-SBI indictments against Williams and Leary, and those indictments are reinstated.  The December 1, 2016 order is otherwise affirmed.

So ordered.