A Superior Court jury convicted the defendant of assault and battery by means of a dangerous weapon (ABDW), assault and battery (A&B), and unarmed robbery.[2] The defendant was jointly tried with his son, who faced parallel charges. On appeal, the defendant challenges the sufficiency of the evidence, asserts error in the prosecutor's closing argument, alleges that the admission of a partial confession by his son without limiting instructions violated his rights pursuant to the confrontation clause, and argues that the assistance of his trial counsel was ineffective in certain respects. Because we conclude that the evidence was insufficient to support the conviction for unarmed robbery, we vacate that conviction and order that a judgment of acquittal be entered with regard to that charge. We otherwise affirm.
Background. In reviewing the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). With that standard in mind, we begin by summarizing the facts as the jury could have found them.
The victim here was Gary Medeiros, who for a time had been romantically involved with the defendant's younger daughter. On May 18, 2011, weeks after he and the daughter had broken up, Medeiros stopped by the home at which the defendant and the defendant's wife, daughters, and son lived. Medeiros entered the home and stole at least $1,800 in cash. After the daughter contacted Medeiros about the theft, which he admitted, Medeiros sent the daughter a text message indicating that he had returned the money to the family's mailbox. However, only approximately $1,000 of the money was found there. Aware of Medeiros's actions and the shortfall, the defendant and his son drove off in a truck to find Medeiros. The defendant's son was driving.
Encountering Medeiros's car on Route 79, the son pulled the truck across the highway to force Medeiros to stop. This largely blocked traffic, with cars slowly having to make their way past the stopped vehicles. That in turn meant that there was a parade of passersby who were able to observe successive portions of what transpired among the defendant, the defendant's son, and Medeiros.
According to one eyewitness, the defendant pulled Medeiros out of his car and began punching him. The defendant's son subsequently took over beating Medeiros by knocking him to the ground and then viciously and repeatedly kicking him in the head with his work boot. While this was occurring, the defendant was observed counting the money that he or the son apparently had retrieved from Medeiros, speaking on a cellular telephone (cell phone), and rebuffing efforts by concerned bystanders to intervene. For example, after one of the passersby told the defendant's son to get away from Medeiros, the defendant approached the passerby and told him that he "[did not] know what [Medeiros] did." After one of the other bystanders pulled a gun and sirens could be heard, the defendant and his son left the scene in the truck. Although Medeiros himself left on his own, he shortly thereafter was found unconscious at his home and subsequently was diagnosed with permanent brain damage.
A police officer stopped the truck in which the defendant and his son were fleeing the scene after the officer received a description of it from one of the eyewitnesses. Both the defendant and his son admitted to having been involved in the roadside incident with Medeiros, and they told the officer that they were retrieving their own money that he had stolen from their home. They then presented to the officer the cash that they had taken from Medeiros.
After the defendant and his son returned home, the defendant's daughter spotted Medeiros's cell phone there. Two calls were placed to the phone at this time. One, placed by Medeiros's current girl friend, was answered by an unidentified male. The other, from a police officer, was answered by the defendant's daughter who then passed the phone to her mother (the defendant's wife). The mother informed the officer that her son had told her that he had taken the phone. The mother's statement to this effect was admitted through the officer's testimony, without objection and without a limiting instruction being requested or provided. In a recorded police interview that was played to the jury, the son directly admitted to taking the phone from Medeiros's car.
Discussion. 1. Sufficiency. (a) Assault and battery. In light of the fact that an eyewitness observed the defendant pull Medeiros out of his car and punch him, there is no merit to the defendant's claim that the evidence was insufficient to support the A&B conviction. While it is true that the eyewitness himself was not able to identify the defendant as the one who did this, considering all of the evidence together, the jury readily could have concluded that the man that the eyewitness described seeing was the defendant.
(b) Assault and battery by dangerous weapon. The ABDW conviction was based on the defendant's aiding and abetting his son's kicking Medeiros's head with his shod foot. To establish such liability, the Commonwealth was required to prove "beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, with the intent required to commit the crime." Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009).
Putting aside whether the jury could have inferred that the defendant and the son formulated a joint plan to attack Medeiros before they stopped his car, there was ample evidence that they acted in concert after they did so. See Commonwealth v. Sexton, 425 Mass. 146, 152 (1997) ("[T]here is no need to prove an anticipatory compact between the parties to establish joint venture if, at the climactic moment the parties consciously acted together in carrying out the criminal endeavor" [citation and quotations omitted] ). This is not a case where the evidence indicates that, prior to the son's kicking Medeiros with his boot, the defendant was a mere bystander. Contrast Commonwealth v. Lopez, 80 Mass. App. Ct. 390, 396-397 (2011) (affirming dismissal of indictment charging felony-murder as joint venturer, where there was no evidence before grand jury that defendant was anything "more than a bystander until the moment the robbery [of the decedent] began").[3] In fact, the jury heard evidence that the defendant was the one who initiated the attack on Medeiros. From the defendant's own actions, the jury readily could have found that the defendant shared his son's intent to commit an ABDW on Medeiros.
To be sure, the Commonwealth was required to prove beyond a reasonable doubt that the defendant knew that his son was "armed" with his work boots. See Commonwealth v. Gorman, 84 Mass. App. Ct. 482, 489 (2013) (in cases that depend on coventurer's use of dangerous weapon, defendant's "knowledge of [the] weapon is an element of the Commonwealth's proof" [quotation omitted] ). However, the jury could have inferred this from the circumstances presented. See generally Commonwealth v. Lee, 460 Mass. 64, 69-70 (2011) (knowledge that coventurer is armed may be inferred from circumstantial evidence).
It was not necessary for the Commonwealth to prove that the defendant knew that his son intended to kick Medeiros with his boot. See Sexton, supra (sufficient evidence to support guilty verdict for assault and battery by means of dangerous weapon as joint venturer even without defendant's prior knowledge that joint venturer intended to use dangerous weapon [concrete pavement] "to effectuate the attack"). Moreover, after the son began kicking Medeiros in the head, the defendant did not retreat, but instead took actions in furtherance of the attack on Medeiros, such as rebuffing intervention by concerned passersby. By such evidence, the jury could have found that regardless of the extent to which the attack on Medeiros was planned in advance, "at the climactic moment the [defendant and his son] consciously acted together in carrying out the criminal endeavor." Ibid. (quotation omitted).
(c) Unarmed robbery. The unarmed robbery conviction was based on the stealing of Medeiros's cell phone.[4] With the son having admitted to taking the phone, the defendant's own liability was based on the Commonwealth's theory that he aided and abetted this robbery.[5] Reading the evidence in the light most favorable to the Commonwealth, there is still no reasonable basis on which the jury could have inferred that the defendant had contemporaneous knowledge about his son's taking the cell phone,[6] much less that the defendant shared his son's intent in taking it. Compare Commonwealth v. Lashway, 36 Mass. App. Ct. 677, 681 (1994) (insufficient evidence that defendant shared intent to steal item taken by alleged coventurer during street scuffle). The evidence therefore was insufficient to establish an essential element of liability as an aider and abettor.[7] See Zanetti, 454 Mass. at 467.
2. Admission of the son's partial confession without limiting instructions. As noted, the son's acknowledgement that he had taken Medeiros's cell phone came in evidence through the admission of both his partial confession to the police and his statement to his mother. Citing to Bruton v. United States, 391 U.S. 123 (1968), the defendant argues that the admission of such statements from his nontestifying codefendant violated his rights pursuant to the confrontation clause of the Sixth Amendment to the United States Constitution. Because the admitted statements from the son did not directly implicate the defendant, such statements could be admitted so long as they were accompanied by limiting instructions. See Commonwealth v. Rivera, 464 Mass. 56, 69 (2013). No such instructions were requested or given here. The Commonwealth acknowledges that such instructions should have been given, and-for his part-the defendant acknowledges that our review is limited to whether any error caused a substantial risk of a miscarriage of justice.
The son's statements went only to his acknowledged theft of the cell phone, and we have vacated the defendant's conviction for aiding and abetting that offense on other grounds. We therefore need not consider whether the admission of the son's statements without limiting instructions constituted reversible error.[8] Although the defendant has attempted to argue that any error related to the admission of the son's statements also somehow materially affected the jury's deliberations on the ABDW and A&B charges, we are not persuaded. In sum, the admission of the son's statements without limiting instructions, even if error, did not cause any substantial risk of a miscarriage of justice with respect to those convictions.
3. Closing argument. The defendant argues that the prosecutor's closing argument was erroneous in various respects. Because no objections were lodged, our review is limited to whether any errors caused a substantial risk of a miscarriage of justice. Commonwealth v. Resende, 476 Mass. 141, 154 (2017).
We disagree with the defendant's contentions that the prosecutor made statements during his closing argument that were unsupported by the evidence. For example, the prosecutor's statement that the man whom one eyewitness saw punch Medeiros was the same man that another witness identified as the defendant, was supported by reasonable inferences from the evidence. Even the prosecutor's enthusiastic statement that the defendants "literally kicked [Medeiros's] head in," was supported by evidence that Medeiros suffered a skull fracture and major internal damage as a result of the kicking. While it is true that the prosecutor repeatedly emphasized the brutality of the attack, this was well supported by the eyewitness accounts, and it did not cross the line of unduly playing on the jurors' sympathies. Compare Commonwealth v. Wilson, 427 Mass. 336, 351 (1998). See generally Commonwealth v. Costa, 414 Mass. 618, 629 (1993) (recognizing that prosecutor may use "enthusiastic rhetoric, strong advocacy, and excusable hyperbole"). Moreover, the fact that the jury acquitted the defendant of causing Medeiros serious bodily injury demonstrates that such comments did not inflame the jury.
Although the prosecutor's suggestion that defense counsel had misstated the law of joint venture liability arguably was unfounded, the prosecutor ultimately did not offer a counter interpretation, but instead urged the jury to listen carefully to the judge's instructions on this. Nor did the prosecutor make any statements that overtly impugned the integrity of defense counsel. We do agree with the defendant that the prosecutor should have avoided telling the jury-in reference to defense counsel's closing-"Don't be fooled."[9] But to the extent these unobjected-to statements crossed the line, they did not create a substantial risk of a miscarriage of justice, whether on their own or when viewed with other potential errors.[10]
Conclusion. We vacate the judgment of conviction of unarmed robbery, set aside the jury verdict, and order that judgment for the defendant be entered with respect to that charge. The judgments of conviction for ABDW and A&B are affirmed.
So ordered.
vacated in part; affirmed in part.

The jury found the defendant guilty of ABDW as a lesser included offense of ABDW causing serious bodily injury, and guilty of A&B as a lesser included offense of aggravated A&B.

Notably, the offense in Lopez, supra at 396, required proof that the defendant shared his alleged coventurer's mental state of "carry[ing] out the robbery with conscious disregard of the risk to [the victim's] life." In contrast, ABDW is a general intent crime. Commonwealth v. Ford, 424 Mass. 709, 711 (1997).

The Commonwealth also claimed that the defendant committed an unarmed robbery by taking money from Medeiros. By way of a special verdict slip, the jury found the defendant not guilty based on that theory.

The defendant maintains that in assessing the defendant's guilt, the jury improperly were allowed to consider the son's admitting to stealing the phone. However, in reviewing the sufficiency of the evidence, we consider what "was admitted in evidence without regard to the propriety of the admission." Commonwealth v. Sepheus, 468 Mass. 160, 164 (2014), quoting from Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 98 (2010).

The jury may well have been able to infer that the defendant knew of the stolen phone by the time the defendant and his son were back at the house (after all, the evidence established that the phone was in sufficiently plain view there that the daughter was able to see it). However, the robbery at that point already had been completed.

We note that the Commonwealth has not demonstrated that the crime at issue (the theft of the phone) was an integral part of the joint enterprise in which they had engaged, or one that readily could have been anticipated by those participating in that enterprise. See Commonwealth v. Harris, 9 Mass. App. Ct. 708, 710 (1980) (defendant "cannot be said to have participated in a joint venture" where evidence does not support inference of plan to commit crime as part of criminal scheme). On the current record, the Commonwealth's suggestion that the phone may have been stolen as part of a coordinated effort to prevent Medeiros from calling the police, or to destroy evidence that the defendant and his son had called Medeiros earlier that day, amounts to speculation. Ibid.

For the same reason, we do not reach the defendant's argument about ineffective assistance of his trial counsel with respect to the counsel's failure to request a limiting instruction and failure to object to the officer's testimony about the mother telling him that the son had stolen the cell phone.

The prosecutor used that expression twice. Notably, defense counsel also had used this expression in his own closing argument.

The defendant's argument fares no better when recast as one contending that his counsel was constitutionally ineffective for failing to object to the prosecutor's closing argument. See Commonwealth v. Randolph, 438 Mass. 290, 295-296 (2002) (equating review for whether unobjected-to error caused substantial risk of miscarriage of justice with whether counsel's failure to object to error deprived defendant of substantial ground of defense).