NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

21-P-699                                          Appeals Court

COMMONWEALTH  vs.  SCOTT MORRISON.

No. 21-P-699.

Norfolk.     December 5, 2022. – September 11, 2023.

Present:  Sacks, Singh, & Brennan, JJ.

Homicide.  Kidnapping.  Conspiracy.  Identification.  Evidence,
    Photograph, Authentication, Identification.  Practice,
    Criminal, Required finding, Identification of defendant in
    courtroom, Instructions to jury.  Statute, Construction.
    Words, "Thereby."

Indictments found and returned in the Superior Court
Department on July 31, 2014, and April 29, 2016.

The cases were tried before Robert C. Cosgrove, J.

Timothy J. Bradl for the defendant.
Pamela Alford, Assistant District Attorney, for the
Commonwealth.

BRENNAN, J.  A Superior Court jury convicted the defendant

of involuntary manslaughter, G. L. c. 265, § 13; aggravated

kidnapping, G. L. c.  265, § 26; and conspiracy to commit

kidnapping, G. L. c. 274, § 7.[1]  On appeal, the defendant argues that the trial judge erred by denying his motions for a required finding of not guilty and instructing the jury improperly based on a misinterpretation of the aggravated kidnapping statute, admitting a photograph showing duct tape found near the victim's remains, permitting a witness's in-court identification of the defendant, and instructing the jury improperly on eyewitness identification.  We affirm.

1.  Background.  We summarize the facts the jury could have found, reserving certain details for later discussion.  On January 1, 2014, the victim, James Robertson, was taken from his home by two men purporting to be "constables."  They promised his mother that they would return him home after his "surprise drug test."  She never saw him again.  Almost two years later, hunters stumbled upon the victim's partial remains in a wooded area in Upton.  Police investigators searched the area and located more of the victim's remains, his clothing, and personal effects.  They followed a trail of evidence that ultimately led to James Feeney, Alfred Ricci, and the defendant.[2]

---

[1] The defendant consented to proceeding on the conspiracy indictment with the underlying indictments.

[2] Feeney was convicted of murder in the first degree, aggravated kidnapping, and conspiracy.  His appeal is currently pending before the Supreme Judicial Court.  Ricci testified for the prosecution as a cooperating witness.  He subsequently

a.  <u>The parties</u>.  The victim was thirty-eight years old and living in Avon with his mother, father, and brother at the time he was kidnapped and murdered.  He was on probation after a brief period of incarceration in the fall of 2013.  The victim had been dating Andrea Morse for about one year, and stayed with her in the fall of 2013 after he was released from prison.  Morse also had a long-term relationship with Feeney, who supplied her with Percocet pills that she frequently shared with the victim.  Ricci was friendly with Feeney, obtained Percocet from him, and saw him often in 2013.  The defendant worked as Feeney's mechanic and bought Percocet from him.  The defendant met Ricci through Feeney.  Feeney used a wheelchair, and he could not walk more than a "few feet" with a cane or walker.  He "did not like [the victim] at all," and became angry when Morse called or sent text messages to the victim.  Feeney told Morse she had to choose between him and the victim.  She "chose" the victim.

b.  <u>The plan</u>.  Feeney was "distraught" when Morse chose the victim over him.  In the months leading up to the murder, Feeney repeatedly indicated to the defendant and Ricci that he wanted to "question" the victim about Morse.  Feeney devised a plan for the defendant and Ricci to dress as constables or probation

---

pleaded guilty to aggravated kidnapping and conspiracy in connection with a plea and cooperation agreement.

officers and "grab" the victim. Feeney told them to use a folder with a picture of the victim and the victim's "police record" so they would "look like officers." He indicated that he would provide them with a gun, badge, and handcuffs.[3] The defendant was to pick up Ricci, who did not drive, and then get the victim and bring him to Feeney at Ricci's house. In anticipation of Feeney's "face-to-face" questioning of the victim, the defendant and Ricci bolted a metal chair to the floor of Ricci's garage.

    c. <u>The kidnapping and killing</u>. On January 1, 2014, the defendant, Feeney, and Ricci exchanged numerous cell phone calls and text messages (texts).[4] After one such call from Feeney, the defendant and Ricci drove to the victim's home. The defendant parked his silver Toyota Camry across the front of the driveway as the victim's brother was arriving with his girlfriend. The defendant told the brother that they were there to bring the victim in for a random drug test and showed him a paper with a "Commonwealth stamp." The victim spoke briefly with the

---

[3] Feeney had access to police equipment through Michael Schoener, a Dedham police officer and another Percocet customer. See <u>Commonwealth</u> v. <u>Schoener</u>, 491 Mass. 706, 706-707 (2023) (in separate trial, Schoener was "convicted of being an accessory before the fact to kidnapping").

[4] Analysis of the defendant's cell phone showed thirty-eight calls or texts with Feeney and nine with Ricci. Feeney and Ricci exchanged twenty-two calls or texts.

defendant, who had a badge, was carrying a pair of handcuffs, and was armed with a black gun in a holster. Looking through her kitchen bay window, the victim's mother could see the defendant standing in her driveway talking to Ricci. She followed the victim outside and spoke to the defendant, who reassured her that he and Ricci would bring the victim home after the drug test. The defendant then put the victim in the rear of the car with Ricci.

After Ricci handcuffed the victim, the defendant drove to Ricci's house in Canton where Feeney was waiting. The defendant gave Feeney a duffel bag from the front seat of the Toyota that contained, among other things, a baton. Feeney directed the defendant and Ricci to bring the victim to the garage, where they seated the victim in the metal chair that they had bolted into the floor one week earlier. Feeney entered the garage wearing all black clothing and a black ski mask, and carrying the bag that he got from the defendant. The baton was on top of the bag. Feeney shackled the victim to the chair and told the defendant and Ricci to leave; he also instructed them that no one was allowed in the garage.

The defendant and Ricci drove to a nearby hardware store to purchase duct tape for a car repair. After working on Ricci's mother's car for approximately twenty minutes, the defendant left to fix a different car. Feeney also left Ricci's house

shortly thereafter.  At approximately 12:25 A.M. the next morning, Ricci saw the defendant and Feeney back in his garage standing over the victim's dead body.  Feeney directed the defendant and Ricci to put the body in the trunk of his car. All three men drove to a nearby wooded area, where the defendant and Ricci left the victim's body in the underbrush.

d.  The investigation.  On January 2, 2014, the victim's mother reported that her son was missing.  She told police about the men who had taken the victim for a "drug test" and provided a description of them.  Over the next several weeks, police investigators interviewed the defendant, Feeney, and Ricci, focusing on their activities on the day the victim disappeared. On February 27, 2014, police searched Feeney's apartment and seized two handguns; photographs of the victim; and a duffel bag containing, among other things, a black police baton, handcuffs, leg irons, and zip ties.  Blood found on the baton and other items was later matched to the victim.

e.  Identification of the defendant.  In January 2014, the police showed the victim's mother two photographic arrays in an effort to identify the men last seen with her son.  Although "one person . . . seemed to have some of the facial characteristics" of one of the perpetrators, she could not positively identify anyone from the first array.  In the second array she identified one person as having the "driver's mouth."

The defendant's photograph was not included in either array. Sometime thereafter, the victim's mother and the girlfriend of the victim's brother helped create composite pictures of the two suspects. According to the victim's mother, neither of them was "happy" with the final composites because they did not resemble the suspects. On July 29, 2014, the victim's mother participated in a videotaped lineup procedure at the Norwood police station. During this procedure, she positively identified the defendant as one of the constables who took her son away on January 1, 2014.[5]

2. Discussion. a. Kidnapping statute. The defendant raises interrelated claims regarding the sufficiency of the evidence and the judge's instructions to the jury on the charge of aggravated kidnapping. Under the relevant portion of the kidnapping statute, "[w]hoever commits any offense described in this section while armed with a dangerous weapon and inflicts serious bodily injury thereby upon another person or who sexually assaults such person shall be punished" (emphasis added). G. L. c. 265, § 26, third par., inserted by St. 1998, c. 180, § 63. The defendant asserts that "the word 'thereby' must be construed to relate back and mean that the dangerous weapon used for kidnapping must have caused the injury." He

---

[5] The girlfriend of the victim's brother was unable to identify anyone in the photographic arrays or the lineup.

posits that the trial judge's failure to interpret and apply the statute accordingly, both when ruling on the defendant's motion for a required finding of not guilty and when instructing the jury, was prejudicial error. We disagree. Aggravated kidnapping, on the theory before this jury, requires that a person commit a kidnapping while armed with a dangerous weapon and that the commission of the armed kidnapping cause serious bodily injury to the victim, regardless of the instrumentality of that injury.

"In interpreting the meaning of a statute, we look first to the plain statutory language." Commonwealth v. Perez Narvaez, 490 Mass. 807, 809 (2022), quoting Cavanagh v. Cavanagh, 490 Mass. 398, 405 (2022). "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent." Malloch v. Hanover, 472 Mass. 783, 788 (2015), quoting Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008). We do not determine the plain meaning of a statute in isolation; rather, we consider its specific language in the context of the surrounding text and apply "standard rules of statutory construction and grammar." Rowley v. Massachusetts Elec. Co., 438 Mass. 798, 802 (2003). "All the words of a statute are to be given their ordinary and usual meaning, and each clause or phrase is to be construed with reference to every other clause or phrase without giving undue emphasis to any one

group of words, so that, if reasonably possible, all parts shall be construed as consistent with each other so as to form a harmonious enactment effectual to accomplish its manifest purpose" (citation omitted).  Worcester v. College Hill Props., LLC, 465 Mass. 134, 139 (2013).

"Thereby" is an adverb, defined as "[b]y that means" or "in that way."  Black's Law Dictionary 1781 (11th ed. 2019).  Because it is an adverb, "thereby" must describe a verb, an adjective, or another adverb.  See M. Shertzer, Elements of Grammar 35 (1986).  In the operative sentence of the kidnapping statute, the word "thereby" modifies the verb "inflicts" and in context creates the adverbial phrase, "inflicts serious bodily injury thereby," which in turn modifies the entire verb clause, "commits any offense described in this section while armed with a dangerous weapon," at the beginning of the sentence.  See Commonwealth v. Rodriguez, 83 Mass. App. Ct. 267, 270-271 (2013) (interpreting aggravated kidnapping as "commit[ting]" kidnapping while armed, with additional requirement of either serious bodily injury or sexual assault).[6]  Because "weapon" is a noun,

_____

[6] In Rodriguez, 83 Mass. App. Ct. at 272-273, we vacated the defendant's conviction of aggravated kidnapping, applying the rule of lenity where the judge's instruction omitted the requirement that the defendant be armed under the sexual assault prong of the offense and the statute reasonably could be interpreted as requiring that the defendant be armed under either theory.  Here, because the meaning and application of "thereby" in the statute cannot plausibly be found to be

by simple rules of grammar, it cannot be modified by the adverb "thereby" or by the adverbial phrase "inflicts serious bodily injury thereby." See Elements of Grammar, supra (nouns are limited, identified, or described by adjectives). We thus discern no error in the trial judge's reasoning that "the more natural reading is that the thereby is [a] reference to the entire crime [of kidnapping] and not specifically to the firearm." To the contrary, we conclude that it is the logical and grammatically correct interpretation of the statute.

We are not persuaded by the defendant's contention that "thereby" is the equivalent of "by means of" as that phrase is used in the crime of assault and battery by means of a dangerous weapon. Beyond the grammatical misassignment of linking "thereby" to the weapon as discussed above, this argument ignores the use of the phrase "while armed with a dangerous weapon" in the aggravated kidnapping provision. The Legislature consistently has defined "armed" as possessing but not necessarily using a dangerous weapon. See, e.g., Commonwealth v. Nickologines, 322 Mass. 274, 277 (1948) (armed robbery); Commonwealth v. Werner, 73 Mass. App. Ct. 97, 101-103 (2008) (armed assault in dwelling house). Moreover, "when the Legislature has intended to distinguish crimes that are

ambiguous, the rule of lenity is not implicated. See Commonwealth v. Carrion, 431 Mass. 44, 45-46 (2000).

committed 'by means of a dangerous weapon' from other crimes that are committed simply by 'being armed with a dangerous weapon,' whether or not the weapon is actually used, it has . . . done so." Commonwealth v. Dunn, 43 Mass. App. Ct. 58, 61-62 (1997).

Given our interpretation of the statute, we need not linger long on the defendant's particular arguments regarding the deficiencies in its application at trial. The defendant moved for a required finding of not guilty on the ground that there was no evidence that the gun used in the kidnapping inflicted serious bodily injury on the victim and objected to the judge's failure to instruct that the same dangerous weapon used to kidnap must cause the victim serious bodily injury. Because we discern no such requirement in the plain language of the statute, and instead conclude that a kidnapping is aggravated by the arming of the defendant and the infliction of bodily injury, these interrelated arguments necessarily fail. There was no error in the judge's denial of the defendant's motion for a required finding on the charge of aggravated kidnapping, see Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), and the jury here were properly instructed on the crime of aggravated kidnapping.[7]

---

[7] As a corollary to his argument regarding the meaning of "thereby" in the statute, the defendant asserts that the judge

b.  Admission of photograph depicting duct tape.  The defendant contends that the judge erred in admitting a photograph of and testimony about a piece of duct tape because the Commonwealth failed to lay a proper foundation for the evidence.  The defendant argues that the photograph should not have been admitted because it was not properly authenticated by a witness who had personal knowledge.  We disagree.  The photograph was authenticated by State police Trooper Bruce Tobin, who was present in the woods when multiple items, including the duct tape, were recovered.  He testified, over the defendant's objection, that he remembered seeing a piece of tape and that the photograph of the duct tape was a fair and accurate representation of how he saw the tape in the woods.  His testimony was sufficient to authenticate the photograph.  See Commonwealth v. Cintron, 435 Mass. 509, 521 (2001) ("The only foundation required for the testimony of lay witnesses is the ability to perceive, recall, and recount information within the witness's personal knowledge"); Commonwealth v. Figueroa, 56

_____

effectively "imposed strict liability" on him as a joint venturer because there was no evidence of his coventurer's "surprise intent to inflict serious bodily injury on [the victim]."  This argument misapprehends the requisite shared intent for aggravated kidnapping.  See Commonwealth v. Johnson, 92 Mass. App. Ct. 538, 544 (2017) (no intent to injure is required for assault and battery by means of dangerous weapon causing serious bodily injury); Commonwealth v. Bibby, 54 Mass. App. Ct. 158, 160-161 (2002) (no specific intent required for first clause of kidnapping statute).

Mass. App. Ct. 641, 646 (2002) ("testimony that the scene [the photograph] show[s] is a fair and accurate representation of something the witness actually saw" sufficient to authenticate photograph).  Additional testimony elicited by defense counsel from Trooper Tobin that conflicted with his initial statements went to the weight, and not the admissibility, of the evidence. See Commonwealth v. Meola, 95 Mass. App. Ct. 303, 313 (2019), quoting United States v. Vayner, 769 F.3d 125 (2d Cir. 2014) ("Thus, after the proponent of the evidence has adduced sufficient evidence to support a finding that the proffered evidence is what it is claimed to be, the opposing party remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the weight of the evidence -- not to its admissibility").  A judge ruling on a preliminary question of admissibility, like a judge ruling on a motion to suppress, is "not required to discard testimony that appears to contain internal inconsistencies, but may credit parts of a witness's testimony and disregard other potentially contradictory portions" (quotation and citation omitted). Commonwealth v. Guardado, 491 Mass. 666, 676 (2023).

c.  In-court identification.  The defendant claims that the judge erred in allowing the victim's mother (witness) to make an in-court identification of the defendant because the witness

failed to first make an unequivocal out-of-court identification. See Commonwealth v. Collins, 470 Mass. 255, 259-267 (2014).[8] Because the defendant moved in limine to exclude the identification testimony and objected at trial, we review for prejudicial error.  See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).  In reviewing a judge's determination that a witness made an unequivocal pretrial identification, "we must confine ourselves to determining whether the judge abused his discretion, . . . meaning that he must have 'made a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives.'"  Commonwealth v. Collins, 92 Mass. App. Ct. 395, 397 (2017), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  We discern no such error.

"A witness makes an 'unequivocal positive identification' where he or she successfully identifies the defendant as the perpetrator, such that the statement of identification is clear and free from doubt."  Commonwealth v. Dew, 478 Mass. 304, 315 (2017), quoting Collins, 470 Mass. at 262.  In Collins, supra at 266, the Supreme Judicial Court announced a prospective rule requiring "good reason" to permit an in-court identification by

---

[8] The defendant conceded at oral argument that Commonwealth v. Crayton, 470 Mass. 228 (2014), was inapplicable to the extent that the witness here made a previous out-of-court identification.

an eyewitness who participated in a pretrial identification procedure but did not make an "unequivocal positive identification" of the defendant. See Mass. G. Evid. § 1112(c)(1)(A), (2)(A) (2023). However, in Collins, supra at 259-261, the eyewitness plainly failed to make an "unequivocal" pretrial identification where she initially said "no" to each of the eight photographs she viewed in an array and then testified that two of the photographs "looked like" the defendant.

Here, by contrast, the witness participated in a lineup that was video recorded, where she positively identified the defendant as one of the two constables who took the victim from her home for a purported drug test. Whereas the witness had earlier indicated, when viewing the two photographic arrays that did not include the defendant,[9] that "nobody seemed right" and she "couldn't identify anybody for certain," during the lineup procedure she asserted that she was "certain it was [the defendant]."[10] Moreover, at trial, she testified that she was

_____

[9] Although we disagree with the defendant's characterization of these as instances of "misidentifications," we note that the judge, relying on language in the eighth numbered paragraph of the model jury instruction on eyewitness identification, see Model Jury Instructions on Eyewitness Identification, 473 Mass. 1051 (2015), ruled that "so long as a positive identification is made, previous failures to identify or previous misidentifications go to the weight of identification and not the admissibility."

[10] The Commonwealth entered the video recording of the lineup in evidence. During the procedure, the witness appeared

"[o]ne hundred percent" certain it was the defendant in the in-person lineup.[11]  On these facts, the judge reasonably could have found that the witness's pretrial identification qualified as an unequivocal positive out-of-court identification, thereby taking it outside the scope of Collins.  We therefore conclude that the judge did not abuse his discretion by admitting the witness's in-court identification of the defendant, including her level of certainty.  See Commonwealth v. German, 483 Mass. 553, 565 (2019) ("It is well established that an eyewitness may be permitted to testify as to his or her level of certainty, and the weight of this evidence is for the jury"); Dew, 478 Mass. at 314-315.  Cf. Collins, 470 Mass. at 265-266 (witness's in-court identification of defendant constituted "unnecessarily suggestive in-court showup" where out-of-court identification was "less than an unequivocal positive identification").

d.  Jury instruction.  The defendant asserts that the judge erred in failing to give his requested jury instruction on identification.  Because the defendant objected to the judge's eyewitness identification instruction, we review for prejudicial error.  See Commonwealth v. Herndon, 475 Mass. 324, 328 (2016).

_____

to have a physical reaction to the defendant when he entered the room.

[11] The judge initially reserved his ruling on admitting testimony about the level of certainty the witness expressed, and later allowed the full identification in evidence.

The defendant requested that the judge begin the jury instructions with language from the model jury instruction on eyewitness identification that said, "the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant is the person who committed or participated in the alleged crimes."  Model Jury Instructions on Eyewitness Identification, 473 Mass. 1051.  The judge indicated that the requested language would be provided in the paragraph immediately preceding identification and that he was "not inclined to change the way I have it."  The judge ultimately instructed the jury:  "As to any charge, ladies and gentlemen, you must be satisfied beyond a reasonable doubt that the crime was committed and that the defendant committed it.  As to the second requirement, that the defendant committed the crime, it's not necessary that a witness observe the crime or is certain of the identity of the defendant, but whatever means are employed, . . . the Commonwealth must satisfy you, the jury, beyond a reasonable doubt that the defendant committed the crime."  He then instructed the jurors on identification.  Where, as here, the content mirrored the model jury instruction and the defendant's requested language, we discern no abuse of discretion in the judge's instruction.  See Commonwealth v. Cruz, 445 Mass. 589, 597 (2005), quoting Commonwealth v. Daye, 411 Mass. 719, 739 (1992) ("The judge is not required to grant a particular

instruction so long as the charge, as a whole, adequately covers the issue").

<u>Judgments affirmed</u>.

SACKS, J. (dissenting in part).  I respectfully disagree
with the majority's conclusion that the aggravated kidnapping
statute unambiguously establishes being armed with a dangerous
weapon and inflicting serious bodily injury as two entirely
independent, unconnected aggravating circumstances.[1]  Ante
at    .  The statute is ambiguous, and the defendant's
interpretation, under which the serious bodily injury must be
inflicted by the dangerous weapon, is just as plausible as the
majority's.  "The rule of lenity requires us to give a defendant
'the benefit of any rational doubt' where we conclude that a
'statute is ambiguous or [we] are unable to ascertain the intent
of the Legislature.'"  Commonwealth v. Rossetti, 489 Mass. 589,
599 (2022), quoting Commonwealth v. Montarvo, 486 Mass. 535, 542
(2020).  See Commonwealth v. Ashford, 486 Mass. 450, 467 (2020)
(rule of lenity applies where statute could "plausibly be found
to be ambiguous" or where there is "any reasonable doubt" as to
its meaning [quotations and citations omitted]); Commonwealth v.
Lopez, 91 Mass. App. Ct. 485, 489 (2017) (where both defendant's
and Commonwealth's interpretations are plausible, "we are
required to accept the defendant's interpretation under the rule
of lenity").  Therefore, I would vacate the conviction of

---

[1] I agree with the majority's resolution of the other issues
on appeal.

aggravated kidnapping and remand for resentencing on the lesser included offense of kidnapping.

The statute provides, as relevant here, that "[w]hoever commits any offense described in this section while armed with a dangerous weapon and inflicts serious bodily injury thereby upon another person or who sexually assaults such person shall be punished" (emphasis added). G. L. c. 265, § 26, third par. For ease of discussion, we may safely substitute "kidnapping" for "any offense described in this section," and "SBI" for "serious bodily injury," so that a short form of the provision would be: "whoever commits kidnapping while armed with a dangerous weapon and inflicts SBI thereby upon another person . . . shall be punished." As the majority recognizes, interpreting this provision requires us to decide the significance of the word "thereby."

I agree with the majority that "thereby" is an adverb; that it means "by that means" or "in that way"; and that it modifies the verb phrase, "inflicts [SBI]." Ante at . So I agree with the majority that the statute may be read to provide: "whoever commits kidnapping while armed with a dangerous weapon and inflicts SBI by that means [or in that way] upon another person . . . shall be punished." The question thus becomes, what is the "that means" or "that way" to which this provision

refers?  Clearly, it must be some "means" or "way" already mentioned earlier in the sentence.

Turning first to "that means," to what word or phrase earlier in the sentence does it refer?  The word "means," as used here, is a noun.[2]  Which noun earlier in the sentence is meant?  It could be either "kidnapping" (i.e., "any offense described in this section") or "dangerous weapon."

If we substitute "kidnapping" for "that means," the provision would read, "whoever commits kidnapping while armed with a dangerous weapon and inflicts SBI by kidnapping upon another person . . . shall be punished."  This is essentially the majority's interpretation.  It does not require that the SBI be inflicted by the dangerous weapon, and it is plausible.[3]

But if instead we substitute "dangerous weapon" for "that means," the provision would read, "whoever commits kidnapping

_____

[2] "Means" is the plural of "mean," Webster's Third New International Dictionary 1399 (2002), and "mean" is defined in pertinent part as "something (as a step, stage, connection) intervening, intermediate, or intermediary" or "something by the use or help of which a desired end is attained or made more likely," id. at 1398.

[3] The meaning would be no different if instead of "kidnapping" we substituted the full phrase, "kidnapping while armed with a dangerous weapon," so that the whole provision would read, "whoever commits kidnapping while armed with a dangerous weapon and inflicts SBI by kidnapping while armed with a dangerous weapon upon another person . . . shall be punished." This language, too, would not require that the SBI have been inflicted by the dangerous weapon.

while armed with a dangerous weapon and inflicts SBI by dangerous weapon upon another person . . . shall be punished." This is the defendant's interpretation.  It <u>does</u> require that the SBI be inflicted by the dangerous weapon, and it, too, is plausible.  (Indeed, the trial judge said it was "by no means a frivolous argument.")

Turning to the alternative meaning of "thereby," which is "in that way," the result is no different.  To what word or phrase earlier in the sentence does "that way" refer?  It refers to a verb phrase, but which?  It could refer either to "commits kidnapping" or "armed with a dangerous weapon."

If we substitute "commits kidnapping" for "in that way," the provision would read, "whoever commits kidnapping while armed with a dangerous weapon and inflicts SBI commit[ting][4] kidnapping upon another person . . . shall be punished."  This, once again, is essentially the majority's interpretation; it does not require that the SBI be inflicted by the dangerous weapon, and it is plausible.[5]

---

[4] Changing "commits" to "committing" merely makes the majority's interpretation of "thereby" more intelligible, after we explicate that interpretation by the process of substituting phrases of equivalent meaning.  The same is true of omitting the word "in" when substituting a verb phase from earlier in the sentence for the phrase "in that way."

[5] Much as described in note 3, <u>supra</u>, the meaning would be no different if instead of "kidnapping" we substituted the full phrase, "kidnapping while armed with a dangerous weapon."  Doing

But if instead we substitute "armed with a dangerous weapon" for "in that way," the provision would read, "whoever commits kidnapping while armed with a dangerous weapon and inflicts SBI armed with a dangerous weapon upon another person . . . shall be punished."  This, once again, is the defendant's interpretation; it _does_ require that the SBI be inflicted by the dangerous weapon, and it, too, is plausible.

The majority offers no way to choose among these plausible interpretations.  I address the majority's points in order.

1.  <u>Grammar</u>.  The majority's discussion of the rules of grammar, while interesting, misses a key point.  In asserting that the word "thereby" must <u>describe</u> or <u>modify</u> a verb (or an adjective or another adverb) and therefore cannot modify "weapon," <u>ante</u> at    , the majority glosses over the fact that the word "thereby," to be given any meaning, must also <u>refer</u> to some other word or phrase.  I agree with the majority that "thereby" modifies "inflicts," but that does not tell us what "thereby" means or refers to.  "Thereby," as used in any particular sentence, gains meaning only when we know where in the sentence the "there" is.  More specifically, once we agree

---

so would make the whole provision read, "whoever commits kidnapping while armed with a dangerous weapon and inflicts SBI committing kidnapping while armed with a dangerous weapon upon another person . . . shall be punished."  This language, too, would not require that the SBI have been inflicted by the dangerous weapon.

(as the majority does) that "thereby" means "by that means" or "in that way," we need to know which means or way is referred to. The majority's grammatical analysis does not answer that question.

2. The Rodriguez decision. If the majority's citation of Commonwealth v. Rodriguez, 83 Mass. App. Ct. 267 (2013), is meant to suggest that that decision addressed the particular interpretive issue before us, the suggestion is incorrect. See ante at    . Simply put, Rodriguez, supra at 269-272, addressed only whether, under the sexual assault branch of aggravated kidnapping -- set forth in the same sentence of the statute as is at issue here -- the defendant must be armed with a dangerous weapon. The defendant in Rodriguez argued that proof he was so armed was required, but that the jury had not been so instructed, whereas the Commonwealth argued that no such proof was required. See id. at 269-270.

We agreed in Rodriguez that the defendant's interpretation was "reasonabl[e]" and "plausible," id. at 270, 272, that the statute was ambiguous on this point, see id. at 272, and that the rule of lenity applied, meaning that the defendant's interpretation prevailed and his conviction must be set aside, see id. at 272-273. But nowhere does the Rodriguez decision discuss, let alone imply a view on, whether the SBI branch of aggravated kidnapping requires that the SBI be inflicted with a

dangerous weapon.  Rodriguez is most notable here for its recognition that this sentence of the statute contains an ambiguity, and that both the defendant's interpretation and the Commonwealth's were "somewhat grammatically awkward."  Id. at 271 n.5.  See id. at 272 n.9.  Perhaps we should not be surprised that the sentence contains more than one ambiguity.

3.  Legislative usage.  That the statute uses the phrase, "while armed with a dangerous weapon," whereas the Legislature typically says "by means of a dangerous weapon" when it intends to require use of the weapon, ante at    , does not answer the key question:  to what does "thereby" refer?  To illustrate, suppose that the statute, instead of saying (in the short form adopted above), "whoever commits kidnapping while armed with a dangerous weapon and inflicts SBI thereby upon another person . . . shall be punished," said, "whoever commits kidnapping by means of a dangerous weapon and inflicts SBI thereby upon another person . . . shall be punished."  This would certainly tell us that the kidnapping must be accomplished by using the dangerous weapon -- a requirement absent from the statute as enacted.  But it would not tell us whether the SBI must also be inflicted by using the dangerous weapon.  This is because the sentence would still contain the word "thereby" -- which, in identifying the means by which (or the way in which) the SBI was inflicted, still could plausibly refer back either to the

kidnapping (or the kidnapping as accomplished using the dangerous weapon), or alternatively to the weapon itself.

To be sure, if the Legislature had intended the defendant's interpretation, it could have said so more clearly, by avoiding the word "thereby." For example, it could have provided that "whoever commits kidnapping while armed with a dangerous weapon and inflicts SBI by means of such weapon upon another person . . . shall be punished." But the converse is equally true. If the Legislature had intended the Commonwealth's interpretation, it could have said so more clearly, by providing that "whoever commits kidnapping while armed with a dangerous weapon and inflicts SBI while armed with such weapon upon another person . . . shall be punished." The Legislature did neither of these things, instead leaving us to guess regarding which phrase "thereby" refers to.[6]

4. Legislative history. Finally, the majority cites nothing in the legislative history of the aggravated kidnapping statute that makes the defendant's interpretation any less plausible than the Commonwealth's. As the majority notes, the language at issue here was added, as a new third paragraph of

---

[6] Similarly, had the Legislature intended the defendant's interpretation, it could have said, "inflicts serious bodily injury therewith." But it is equally true that if the Legislature had intended the Commonwealth's interpretation, it could have said, "inflicts serious bodily injury in the course thereof." Unfortunately, the Legislature did neither.

G. L. c. 265, § 26, by St. 1998, c. 180, § 63. That 1998 statute was entitled "An Act relative to gun control in the Commonwealth." Among other things, it amended numerous statutes establishing criminal offenses, by adding language providing that committing such an offense "while armed with a firearm, shotgun, rifle, machine gun or assault weapon" was an aggravating factor, permitting and in many instances mandating a longer term of incarceration.[7] Those provisions did not, at least by their terms, require that the aggravated offenses be committed "by means of" the specified weapons, but only that they be committed "while armed with" one of those weapons. From this, one might conclude that a main purpose of the 1998 statute was to deter the commission of crimes "while armed with" one of the specified weapons, and that the aggravated kidnapping language at issue here should be interpreted in the same manner.

The problem with such an approach is that, although the 1998 statute did insert language in the kidnapping statute to accomplish that purpose, that language is separate from the

---

[7] Sections of St. 1998, c. 180, that inserted language like that quoted in text include § 50 (amending G. L. c. 265, § 17, concerning armed robbery); §§ 51-53 (amending G. L. c. 265, § 18, concerning assault with intent to rob); § 55 (amending G. L. c. 265, § 18A, concerning assault in dwelling house); § 58 (amending G. L. c. 265, § 21A, concerning assault with intent to steal motor vehicle); § 59 (amending G. L. c. 265, § 22 [b], concerning rape); and § 61 (amending G. L. c. 265, § 24, concerning assault with intent to rape). See St. 1998, c. 180, §§ 62, 64-67.

language at issue here.  More specifically, St. 1998, c. 180, § 63, inserted both a new second paragraph and a new third paragraph in G. L. c. 265, § 26.  It was the new second paragraph that established kidnapping "while armed" or "while being armed" with specified weapons as aggravated forms of kidnapping, warranting greater punishment.[8]  This was the language that furthered the purpose of deterring kidnapping "while armed" or "while being armed" with the specified weapons.

The language at issue in this case, however, is in the new and distinct <u>third</u> paragraph of the kidnapping statute.  It addresses kidnapping while armed with any "dangerous weapon," rather than being limited, as is the second paragraph, to kidnapping while armed with a firearm, rifle, shotgun, machine gun, or assault weapon.  Thus, that one purpose of the 1998 statute was to deter the commission of crimes "while armed with"

---

[8] The new second paragraph provides:  "Whoever commits any offense described in this section while armed with a firearm, rifle, shotgun, machine gun or assault weapon shall be punished by imprisonment in the state prison for not less than ten years or in the house of correction for not more than two and one-half years.  The provisions of the preceding sentence shall not apply to the parent of a child under 18 years of age who takes custody of such child.  Whoever commits such offense described in this section while being armed with a firearm, rifle, shotgun, machine gun or assault weapon with the intent to extort money or other valuable thing thereby shall be punished by imprisonment in the state prison for life or for any term of years but not less than 20 years."  G. L. c. 265, § 26, second par., inserted by St. 1998, c. 180, § 63.  The parties here do not argue that this provision, including its use of the word "thereby," has any bearing on the interpretive issue before us.

one of the specified weapons sheds no light on the proper interpretation of the language now before us.

There is, however, one snippet of legislative history that may be useful. The language that became § 63 of the 1998 statute was first added to the relevant bill by a floor amendment in the House of Representatives. See 1998 House J. 1973-1974 (June 23, 1998). In the floor amendment, the pertinent language read as follows: "Whoever commits such offense with any dangerous weapon and inflicts serious physical injury upon another person or who sexually abuses said person shall be punished by imprisonment in the state prison for not less than [twenty-five] years." Id. at 1974. This version of the bill suggested, if anything, that the kidnapping must be committed "with" (not merely "while armed with") a dangerous weapon. More to the point, it lacked the word "thereby," and thus it suggested no necessary connection between the weapon and the infliction of injury.

But later, in a conference committee appointed to reconcile the competing House and Senate versions of the bill, the language was amended, including by adding the word "thereby," which may be read to suggest just such a connection between the weapon and the injury.[9] As so amended, it was enacted into law,

---

[9] The language appeared in section 63 of the conference report, 1998 Senate Doc. No. 2276, which was enacted by both

to read (as it does today):  "[w]hoever commits any offense described in this section while armed with a dangerous weapon and inflicts serious bodily injury thereby upon another person or who sexually assaults such person shall be punished by imprisonment in the state prison for not less than [twenty-five] years."

I do not assert that this snippet of legislative history makes the defendant's interpretation more plausible than the Commonwealth's.  But certainly his interpretation is no less plausible.  The statute presents "an ambiguity that must be resolved in favor of the defendant under the rule of lenity." Rossetti, 489 Mass. at 599.

Accordingly, because the jury were not asked to determine whether the gun possessed by the defendant during the kidnapping caused the victim any serious bodily injury, and because there was no evidence that the gun caused the victim any such injury,[10]

---

houses and signed by the Acting Governor.  See 1998 House J. 2077, 2080 (July 20, 1998); 1998 Senate J. 2146 (July 20, 1998); St. 1998, c. 180.

[10] The victim's remains showed no evidence of a gunshot wound, and in opposing the defendant's motion for a required finding of not guilty, the Commonwealth cited no evidence that the victim was injured with the gun.  As for the police baton, assuming arguendo that there was sufficient evidence for the jury to find (1) that the baton was used to inflict SBI and (2) that the defendant was liable on a joint venture theory for that use of the baton, the problem remains that the jury were not instructed on the need to find that the baton (or any dangerous weapon) caused the SBI.

I would vacate the judgment on the aggravated kidnapping offense and remand for entry of judgment on the lesser included offense of kidnapping, see G. L. c. 265, § 26, first par., and for sentencing on that offense.[11]  See <u>Commonwealth</u> v. <u>Lavin</u>, 101 Mass. App. Ct. 278, 301 n.28 (2022), <u>S</u>.<u>C</u>., 491 Mass. 809 (2023).

---

[11] The evidence would also have supported a conviction of another form of aggravated kidnapping.  As mentioned, G. L. c. 265, § 26, second par., provides:  "Whoever commits any offense described in this section while armed with a firearm, rifle, shotgun, machine gun or assault weapon shall be punished by imprisonment in the state prison for not less than ten years or in the house of correction for not more than two and one-half years."  It was undisputed that the defendant was armed with a firearm during the kidnapping, and the defendant conceded that this charge could be submitted to the jury.  However, the jury were not asked to and did not find that fact.